WALCOTT & STEELE, INC. v. ROSAMOND CARPENTER

5-4818                                        436 S.W. 2d 820

Opinion Delivered February 10, 1969

*David F. Gillison Jr.* for appellant.

*Drew & Holloway* for appellees.

LYLE BROWN, Justice.   The plaintiffs below (appellees here) were Rosamond and Hillman Carpenter, brothers who as partners farmed lands belonging to the other plaintiff, Nelson W. Bunker III.   Plaintiffs sued Walcott & Steele, Inc., seed dealers, alleging loss of a

substantial portion of their cotton crop produced from certified cottonseed sold Carpenter Brothers by Walcott & Steele. Judgment was awarded on the theory of violation of express warranty of the seed. Walcott & Steele appeals.

Carpenter Brothers have a farming operation adjacent to the town of Lake Village. They rent several acres from Bunker Farms, paying the landlord one-fourth of the crops, mostly cotton and soybeans. In February 1966, Carpenter Brothers purchased cottonseed from Walcott & Steele, Inc., of Greenville, Mississippi. The order was for sixty bags, fifty pounds each, of Stoneville 213 seed. Evidence for the brothers was to the effect that the seed was delivered by truck and placed in dry quarters in a storage barn; that the seed was planted under normal conditions; that much of it failed to germinate; and that replanting failed to produce the desired results. Thereupon agents of the State Plant Board were called upon to test seed gathered from one of four sacks left over. The analysis showed germination to be 27.75%. To each of the sixty bags delivered was attached a tag showing germination to be eighty per cent. The State Plant Board regulations required the percentage of germination to be placed on the tags.

The local agent for the Agricultural Stabilization and Conservation Service produced the acreage records covering Carpented Brothers' 1966 operations. Those records showed a total of 176.2 planted acres which failed to produce. Evidence from the gin records showed that in 1965 the Carpenters ginned 1231 pounds per acre, whereas in 1966 the ginning dropped to 662 pounds average per acre.

The jury awarded damages of $5,718, to be divided between Carpenter Brothers and Bunker Farms, the landlord. A credit of $176.25 was allowed Walcott & Steele for balance owed on account.

The facts to be evaluated in determining the nature of the warranty are important. Rosamond Carpenter testified that Walcott & Steele's salesman came by Rosamond's home. They had transacted business the year previous. Rosamond said he placed an order for sixty bags of Stoneville 213 cottonseed. (The meaning of "Stoneville 213" is not explained.) That was the sum total of the conversation gleaned from the record. Now as to the origin of this shipment of Stoneville 213. The seeds were grown by H. K. Hammett & Sons of Greenville, Mississippi. Hammett operates under the supervision and inspection of the Mississippi Seed Improvement Association, the official certifying agency for that State. Hammett gins the cotton, cleans and otherwise processes its seed. Each lot of seed is given a number and they are said to be kept separated, one lot from the other. Field men for Mississippi Seed Improvement Association inspect each lot. If it is approved then that agency issues a green certification tag for each fifty pounds in the approved lot. The tag shows the date tested, percentages of germination, hard seed, purity, crop seed, inert, weed seed, and noxious weeds.

Walcott & Steele picks up seed from Hammett in Walcott's trucks and in bulk. Before bagging in its own trade bags, Walcott puts the seed through another processing. That includes removing any lint, by neutralizing the lint with a soda solution, cleaning out any trash, removing immature seed, and disinfecting the seed. Thereupon, a processing report is sent to Mississippi Seed Improvement Association. On the basis of both the reports from Hammett and Walcott, the green certification tags are released to Walcott and one is by Walcott affixed to each bag. The tag has a certification over the printed signature of Mississippi Seed Improvement Association.

Walcott invoiced the seed to Carpenter Brothers under the following description: "60, 50# bags Hi-Vigor Stoneville 213, Demosan treatment." At the bottom of the invoice was this wording:

NON-WARRANTY: WALCOTT & STEELE, Inc. Give no Warranty, Express or Implied. As To Description, Productiveness, or Any Other Matter of Any Seeds That We Sell and We Will Not in any Way Be Responsible for the Crop. Our liability in all Instances Is Limited to the Purchase Price of the Seed.

NOTICE: All claims for credit must be made within 10 days or will not be allowed.

Excepting those words shown in caps, the print can be easily classified as fine print. Mr. Carpenter said the deliveryman gave him a copy of the invoice which he signed and returned. He said he did not read it.

Each bag is tri-colored, red and black on white. Among other things we find this wording from viewing a color print of one of the bags: "Mississippi Certified. HI-VIGOR SEED; GRADED; TREATED; SOLD BY WALCOTT & STEELE, INC."

Hillman Carpenter testified that it is generally understood in that farming community that seed has to have eighty per cent germination. He said he would not have kept the seed if the tags, which he examined, had not shown the desired eighty per cent. Rosemond Carpenter testified they had purchased the same type seed from Walcott the year before and had a very good experience.

Based on the enumerated evidence, was the trial court warranted in telling the jury that as a matter of law Walcott sold the seed under an *express* warranty? The court took the position that the germination certification on the green tag constituted the warranty and so informed the jury. For resolution of the question we look to Ark. Stat. Ann. §85-2-313 (Add. 1961). That section defines express warranties and there we find this definition: "(b) Any description of the goods

which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description."

Walcott & Steele knew it could not sell cottonseed for planting in the State of Arkansas unless each bag contained a label showing the true percentage of germination. See Regulations on the Sale of Planting Seed in Arkansas, Sec. 2 (B), which was introduced in evidence without objection. In other words, that provision was certainly a part of the law with which Walcott was expected to comply when it took the order. It would be absurd to say that the Carpenters were required to expressly state to Walcott that the germination percentage "must be truly and correctly given on the permit tag" in order to make it a part of the basis of the bargain. The law itself made it a part of the bargain. We find only one precedent which may be said to be in point. *Mallery* v. *Northfield Seed Co.*, 264 N.W. 573 (Minn. 1936). Mallery ordered alfalfa seed for sowing on his farm. The crop failed allegedly because of seed impurity. The warranty relied on for damages was the tags on the bags of seed which were placed there in conformity with statutory requirement. The Court there held that the representation on the label constituted an express warranty.

We hold as a matter of law that the certification warrants the contents of the bag to be as stated thereon, within reasonable and recognized tolerances, and that it is a warranty made by that vendor who causes the certification to be attached. That warranty is of course subject to the time limit expressed by the regulations. We are not unmindful of the fact that *Smith* v. *Tatum*, 198 Ark. 802, 131 S.W. 2d 619 (1939), gave scant significance to what the Court called a "mistake" on the part of the plant board. Since that decision the plant board regulations of 1956, from which we have quoted, became effective. Also the UCC was adopted in 1961.

The court struck from defendant's pleading the defense of non-warranty based on the non-warranty clause appearing at the bottom of the invoice. The court was correct. There was an express warranty and Walcott was attempting to modify it by "unbargained language of disclaimer" which was inconsistent with the express warranty. To that extent it was unreasonable. Ark. Stat. Ann. § 85-2-316(1) (Add. 1961).

Now to the next point. At the beginning of the trial all witnesses were excluded from the courtroom at the request of both parties. In the afternoon of the first day of trial, a rebuttal witness for the plaintiffs came into the courtroom and stayed over an hour. It appears that he left when Mr. Bunker told him he was not supposed to be in the courtroom. It is not shown that this witness, Alvin Ford, heard any testimony touching on the subject matter of his rebuttal. Trial courts have considerable discretion "in managing and controlling the proceedings at the trial," and that includes control over the witnesses. *Arkansas Motor Coaches* v. *Williams,* 196 Ark. 48, 116 S.W. 2d 585 (1938). The court's action created no prejudicial error and we cannot say he abused his discretion.

Appellant next challenges the court's instruction seven:

> You are instructed that if you find from a preponderance of the evidence that the cottonseed sold by the Defendant, Walcott and Steele, Inc., did not substantially conform to the certification tag and certification of germination thereon, and you find that the failure of these seeds to substantially germinate was the proximate cause of damage to the Plaintiffs, Carpenter Brothers and Bunker Farms. Inc., then you will find for the Plaintiffs, Rosamond Carpenter and Hillman Carpenter, d/b/a Carpenter Brothers, and against the Defendant, Walcott and Steele, Inc., and fix the Plaintiffs'

damages in a sum hereinafter as instructed by the Court.

Walcott contends the instruction is erroneous because it did not direct the jury that it must first find the cottonseed was actually sold by appellants. The court was entitled to have that specific objection called to its attention before the instruction was given, which was not done. Nor do we consider it inherently erroneous because it was admitted Walcott shipped sixty bags of Stoneville 213 and the jury certainly knew it was that particular shipment which was the basis of the lawsuit. The particular lot of seed from which the shipment originated was secondary.

Appellant challenges the court's instruction eight wherein the jury was told the certification tags constituted a warranty. What we have already said disposes of that point. The same statement applies to the court's refusal to give defendant's instructions A and B.

Affirmed.