**RIDER OLDSMOBILE, INC., Plaintiff,**

v.

**Thomas A. WRIGHT, Defendant.**

**Civ. No. 75–1337.**

United States District Court,
M. D. Pennsylvania.

June 15, 1976.

Grant H. Fleming, McQuaide, Blasko & Brown, State College, Pa., for plaintiff.

Thomas A. Wright, pro se.

## OPINION

MUIR, District Judge.

Rider Oldsmobile, Inc., an automobile dealership, seeks damages from one of its customers, Thomas A. Wright, under the provisions of the Motor Vehicle Information and Cost Savings Act of 1972, 15 U.S.C. §§ 1901 et seq. The portion of the Act relevant to this case is Subchapter IV, 15 U.S.C. §§ 1981 et seq., which imposes on the transferor of an automobile certain requirements of disclosure with respect to odometer readings. No party having demanded a trial by jury, the case was tried to the Court with an advisory jury on June 2, 1976. The Court makes the following findings of fact:

## I. FINDINGS OF FACT.

1. Plaintiff Rider Oldsmobile, Inc., is a Pennsylvania Corporation, having its principal place of business at 121 South Burrowes Street, State College, Pennsylvania. (Uncontested)

2. Plaintiff is engaged in the business of selling new automobiles and in buying and selling used automobiles. (Uncontested)

3. Defendant Thomas A. Wright is an individual who resides at 521 Hillcrest Avenue, State College, Pennsylvania. (Uncontested)

4. On or about November 1, 1972, Defendant purchased a 1972 Chevrolet Estate Stationwagon automobile, Vehicle Identification No. IN35V2T266863, hereinafter "1972 Chevrolet", and was the sole owner of said automobile until September 10, 1975. (Uncontested)

5. On or about September 9, 1975, Defendant's 1972 Chevrolet had been driven over 135,000 miles, although the odometer reading on that date indicated mileage amounting to not more than 35,690 cumulative miles. (Uncontested)

6. On September 9, 1975, Defendant visited the office of Charles Rider, II at Plaintiff's place of business, for the purposes of negotiating the purchase of a new model stationwagon and negotiating the sale of his 1972 Chevrolet. (Uncontested)

7. Charles Rider II and John Jabco were at all times acting as agents, servants and employees of Plaintiff.

8. A memorandum of the above-mentioned transaction was made on September 9, 1975, by Charles Rider, II, a copy of which was given to Defendant. This memorandum is Plaintiff's Exhibit # P–1.

9. On September 9, 1975, Defendant agreed to sell and Plaintiff agreed to buy the 1972 Chevrolet for the amount of $3,054.00, which amount was to be deducted from the purchase price of a 1976 Oldsmobile Stationwagon which Plaintiff agreed to sell to the Defendant. (Uncontested)

10. On September 9, 1975, Defendant gave Plaintiff's agent, Charles Rider, II, the amount of $1,000.00 toward the purchase of the 1976 Oldsmobile automobile, which amount is evidenced by a receipt given by Plaintiff to Defendant (Plaintiff's Exhibit # P–2). (Uncontested)

11. On September 9, 1975, Defendant gave Charles Rider II instructions to prepare and have ready for the next day the new 1976 Oldsmobile automobile.

12. On September 10, 1975, Defendant returned to Plaintiff's place of business for the purpose of delivering and transferring his 1972 Chevrolet to Plaintiff.

13. On September 10, 1975, Plaintiff, its agents, servants, and employees, had no knowledge that the 1972 Chevrolet had been driven more than 35,690 miles.

14. On September 10, 1975, Defendant gave Plaintiff's agent, John J. Jabco, the amount of $1,248.00 toward the purchase of the 1976 Oldsmobile automobile, which amount is evidenced by a receipt given by Plaintiff to Defendant (Plaintiff's Exhibit # P–4). (Uncontested)

15. On September 10, 1975, Defendant transferred title and possession of the 1972 Chevrolet to Plaintiff. (Uncontested)

16. On September 10, 1975, Defendant applied for title to the 1976 Oldsmobile automobile and took possession of said automobile on that date. (Uncontested)

17. On September 10, 1975, after completion of forms and applications relating to the transfer of the 1972 Chevrolet to Plaintiff, the Defendant took possession of the 1976 Oldsmobile and left with Plaintiff the 1972 Chevrolet.

18. On September 11, 1975, or on September 12, 1975, Plaintiff discovered that the 1972 Chevrolet had been driven well over 35,690 miles, and Plaintiff suspected that the actual mileage was 100,000 miles greater than that shown on the odometer.

19. On either September 11, 1975, or on September 12, 1975, immediately after discovering the actual mileage on the 1972 Chevrolet, Plaintiff withdrew the 1972 Chevrolet from sale on the retail market until such time as Defendant could be contacted.

20. On September 17, 1975, Defendant personally appeared at Plaintiff's business.

21. On September 19, 1975, Plaintiff again attempted to place the 1972 Chevrolet on the retail market.

22. On September 19, 1975, an advertisement was placed in the Centre Daily Times newspaper by Plaintiff advertising for sale the 1972 Chevrolet as having high mileage (Plaintiff's Exhibit # P–6).

23. Between September 19, 1975, and September 22, 1975, Plaintiff was unsuccessful in selling the 1972 Chevrolet on the retail market.

24. On September 22, 1975, Plaintiff sold the 1972 Chevrolet to Jay Storch, another automobile dealer, for $1,200.00 (Plaintiff's Exhibit # P–9).

25. The Defendant, on September 10, 1975, signed an Odometer Mileage Statement form (Plaintiff's Exhibit # P–3).

26. The odometer reading on the 1972 Chevrolet at the time of transfer was the same as that shown on Exhibit # P–3, the Odometer Mileage Statement.

27. On September 9, 1975, Defendant had actual knowledge of the number of miles travelled by the 1972 Chevrolet.

28. Defendant also had actual knowledge that the odometer reading on September 9, 1975 indicated mileage amounting to 35,690 miles although the actual mileage was 135,690 miles.

29. The Defendant knew that the odometer reading on the vehicle differed from the number of miles the vehicle had actually travelled and that the difference was greater than that caused by odometer calibration error. (Stipulated)

30. The Defendant did not furnish Plaintiff with a statement that the actual mileage on the 1972 Chevrolet was unknown.

31. The Defendant did not give a false oral or written statement to the Plaintiff concerning the actual mileage driven by the 1972 Chevrolet.

32. Defendant, with intent to defraud, did not, on September 9, 1975 or September 10, 1975, disclose to Plaintiff the actual cumulative mileage of the 1972 Chevrolet automobile.

33. The fair market value of the 1972 Chevrolet if it had been driven only 35,000 miles was between $2700.00 and $3000.00.

34. The fair market value of the 1972 Chevrolet, with over 135,000 miles on it, was between $1800 and $2100.

35. The National Auto Dealers' Association (NADA) Official Used Car Guide is an accepted document within the automobile industry for the valuation of used cars.

36. In accordance with tables contained in the September, 1975 Edition of the NADA Guide, the Plaintiff allowed the Defendant an additional credit of $150.00 for the 1972 Chevrolet's apparent low mileage.

37. The NADA Guide shows a high-mileage deduction of $500.00 for a 1972 Chevrolet such as this one which has been driven 100,000 miles.

38. The Guide does not have high-mileage deduction figures for cars driven in excess of 100,000 miles.

39. The Guide states that "deduction for high mileage should not exceed 40% of average trade-in value."

40. The average trade-in value shown in the September, 1975 Guide for this type of 1972 Chevrolet is $1950.00.

41. The maximum high-mileage deduction for a 1972 Chevrolet such as the one in question is 40% of $1950 or $780.00.

42. The Defendant had the 1972 Chevrolet serviced monthly and maintained it in excellent mechanical condition.

43. The high mileage deduction for the Defendant's 1972 Chevrolet would have been $750.00.

44. The actual damage sustained by the Plaintiff is the sum of the low-mileage credit, $150.00, which it allowed and the high-mileage debit or deduction which would have been assessed, $750.00, if the actual mileage on the 1972 Chevrolet had been known to the Plaintiff, or a total of actual damage of $900.00.

45. The net loss sustained by the Plaintiff was $900.00.

## II. DISCUSSION.

On September 9, 1975, Thomas A. Wright drove his 1972 Chevrolet Estate Stationwagon onto the premises of Rider Oldsmobile to investigate the possibility of trading it for a new automobile. After a brief period of discussion and negotiation with Plaintiff's agent, Charles Rider II, Wright agreed to purchase a 1976 Oldsmobile stationwagon. In figuring the amount of the trade-in which Wright would be allowed toward the purchase price of the new car, Rider determined the value of the 1972 Chevrolet as if it had been driven about 35,000 miles, the figure shown on the odometer. Consequently, in addition to receiving an allowance for the car's excellent appearance and tires, Wright was credited $150.00 for its "low mileage". In fact, the Chevrolet had been driven more than 135,000 miles.

Rider Oldsmobile subsequently discovered the fact that the actual mileage driven on the 1972 Chevrolet exceeded the odometer reading by 100,000 miles and contacted Wright. Efforts to resolve the dispute were unsuccessful and this lawsuit ensued.

Wright knew that the mileage shown on the odometer was 100,000 miles less than the number of miles the 1972 Chevrolet had actually travelled. However, with intent to defraud, he remained mute while the Plaintiff's agent calculated the automobile's trade-in value as if it had been driven only 35,690 miles. Given the declaration of purpose for the promulgation of Subchapter IV of the Motor Vehicle Information and Cost Savings Act of 1972 as found in § 1981,[1] one would expect that such conduct violates the Odometer Requirements contained therein. It does not. In an incredible demonstration of inept draftsmanship, the framers of Subchapter IV have failed to provide for the situation presented by this case.

The disclosure requirements with respect to mileage are contained in 15 U.S.C. § 1988 [2] and the regulations promulgated

---

1. SUBCHAPTER IV.—ODOMETER REQUIREMENTS

§ 1981. Congressional findings and declaration of purpose

The Congress hereby finds that purchasers, when buying motor vehicles, rely heavily on the odometer reading as an index of the condition and value of such vehicle; that purchasers are entitled to rely on the odometer reading as an accurate reflection of the mileage actually traveled by the vehicle; that an accurate indication of the mileage traveled by a motor vehicle assists the purchaser in determining its safety and reliability; and that motor vehicles move in the current of interstate and foreign commerce or affect such commerce. It is therefore the purpose of this subchapter to prohibit tampering with odometers on motor vehicles and to establish certain safeguards for the protection of purchasers with respect to the sale of motor vehicles having altered or reset odometers.
Pub.L. 92–513, Title IV, § 401, Oct. 20, 1972, 86. Stat. 961.

2. § 1988. Disclosure requirements upon transfer of ownership of motor vehicle; promulgation of rules; violations

(a) Not later than 90 days after October 20, 1972, the Secretary shall prescribe rules requiring any transferor to give the following written disclosure to the transferee in connection with the transfer of ownership of a motor vehicle:

(1) Disclosure of the cumulative mileage registered on the odometer.

thereunder at 49 C.F.R. § 580.4.[3] The only two provisions under which Wright could be found liable are §§ 580.4(a) and 580.4(c). Since the Odometer Mileage Statement on file in this case, Exhibit P–3, contains the correct odometer reading at the time of transfer, the date of transfer, the transferor's name and address and the identity of the vehicle, Wright did not violate § 580.-4(a).

 At first blush, it may appear that he did violate § 580.4(c) by failing to " . . . include a statement that the actual mileage is unknown" when he knew that the odometer reading differed from the number of miles the vehicle had actually traveled. However, to hold him liable for failing to make such a statement under this set of facts would be an absurdity. Wright did know the actual mileage the 1972 Chevrolet had traveled and could not forthrightly state that the actual mileage was unknown to him. Forcing him to state that the actual mileage was "unknown", as appears to be the thrust of § 580.4(c), would require him to violate § 1988(b), which makes it unlawful "to knowingly give (sic) a false statement to the transferee in making any disclosure required by such rules." Consequently, the Court cannot adhere to the strictly literal and fundamentally nonsensical interpretation of § 580.4(c) which would hold Wright liable for failing to make a statement that the actual mileage was "unknown" to him when, in fact, he did know the actual mileage.

Through no fault of the Plaintiff or its counsel, Wright evades liability in this case by the fortuity of his having engaged in conduct which, although covered by the spirit of the statute, is not covered by the plain meaning of its words. Nothing in the statute or related regulations requires a statement of the actual mileage by an individual, such as Wright, who knows that it differs from the odometer reading and who knows what it is. The Court has no doubt that the statute and regulations were intended to cover this situation. However, only by stretching and contorting the words of the Act and the regulations can this end be achieved. This is not a proper judicial role. Legislators ought to be able to draft statutes with clarity and care.

(2) Disclosure that the actual mileage is unknown, if the odometer reading is known to the transferor to be different from the number of miles the vehicle has actually traveled.

Such rules shall prescribe the manner in which information shall be disclosed under this section and in which such information shall be retained.

(b) It shall be a violation of this section for any transferor to violate any rules under this section or to knowingly give a false statement to a transferee in making any disclosure required by such rules.

**3.** *§ 580.4 Disclosure of odometer information.*

Except as provided in § 580.5—

(a) Before executing any transfer of ownership document, each transferor of a motor vehicle shall furnish to the transferee a written statement signed by the transferor, containing the following information:

(1) The odometer reading at the time of transfer; and, unless provided elsewhere on a transfer document integral with the odometer disclosure;

(2) The date of the transfer;

(3) The transferor's name and current address; and

(4) The identity of the vehicle, including its make, model, and body type, its vehicle identification number, and its last plate number.

(b) In addition to the information provided under paragraph (a) of this section, the statement shall refer to the Motor Vehicle Information and Cost Savings Act and shall state that incorrect information may result in civil liability under it.

(c) In addition to the information provided under paragraph (a) of this section, if the transferor knows that the odometer reading differs from the number of miles the vehicle has actually traveled, and that the difference is greater than that caused by odometer calibration error, he shall include a statement that the actual mileage is unknown.

(d) If a document provided under the laws or regulations of the State in which the transfer occurs contains the statements required by paragraphs (a), (b), and (c) of this section, the transferor may make the disclosure required by this section either by executing the State document or by executing the disclosure form specified in § 580.6.

(e) If there is no State document as described in paragraph (d) of this section, the transferor shall make the disclosure required by this section by executing the disclosure form specified in § 580.6.

264

 As a result of this quirk in the statute, the Plaintiff is not entitled to any damages. However, the Court is in a position to evaluate the loss sustained by Rider Oldsmobile in this transaction. The Court deems it appropriate to make that finding while the matter is fresh so that in the event of a reversal, another trial can be obviated.

The National Automobile Dealers Association (NADA) Official Used Car Guide is an accepted document within the automobile industry for the valuation of used cars. According to the September, 1975 edition of the NADA Guide, which was in force at the time of the transaction between Wright and Rider, the high-mileage deduction for a 1972 Chevrolet Estate Stationwagon which has been driven 100,000 miles is $500.00. The Guide contains no high-mileage deduction tables for automobiles driven in excess of 100,000 miles. However, it does state that the "deduction for high-mileage should not exceed 40% of average trade-in value". The average trade-in value shown in the September, 1975 NADA Guide for Wright's 1972 Chevrolet is $1950.00. Therefore, the maximum deduction for high-mileage which would have been charged against Wright's 1972 Chevrolet was $780.00. Because Wright maintained the automobile in excellent condition, both mechanically and outwardly, the Court is of the view that the maximum high-mileage deduction would not have been assessed and that a figure of $750.00 would have been reached. Consequently, adding the $750.00 debit to the $150.00 credit that was actually allowed, the Court concludes that Rider Oldsmobile's actual damages are $900.00. We also conclude that the difference between the fair market value of the car with its actual mileage and the fair market value of the car with a mileage of 100,000 less than its actual mileage is $900.00.

### III. CONCLUSIONS OF LAW.

1. Defendant Thomas A. Wright knew the actual mileage on the 1972 Chevrolet automobile which the Defendant transferred to Rider Oldsmobile, Inc. and with the intent to defraud Rider Oldsmobile, Inc., failed to disclose it to the Plaintiff.

2. The Odometer Mileage Statement completed as a part of this transaction complies with § 408 of the Motor Vehicle Information and Cost Savings Act of 1972, 15 U.S.C. § 1988.

3. Defendant did not violate § 408 of the Motor Vehicle Information and Cost Savings Act of 1972, 15 U.S.C. § 1988, by failing to make written or oral disclosure of the actual mileage on the 1972 Chevrolet when he knew the actual mileage and knew that the odometer reading was different from that figure.

An appropriate order will issue.