James Charles WILLIAMS *v.* STATE of Arkansas

CA CR 85-128                                    702 S.W.2d 825

Court of Appeals of Arkansas
En Banc
Opinion delivered February 5, 1986

*William R. Simpson, Jr.*, Public Defender, *Donald K. Campbell, III*, Deputy Public Defender, by: *Carolyn P. Baker*, Deputy Public Defender.

*Steve Clark*, Att'y Gen., by: *Connie Griffin*, Asst. Att'y Gen., for appellee.

DONALD L. CORBIN, Judge. Appellant, James Charles Williams, was charged with the first degree murder of his brother and convicted of second degree murder by a Pulaski County Circuit Court jury. He was sentenced to thirty years imprisonment in the Arkansas Department of Correction. The only issue raised by this appeal is whether the trial court committed reversible error in refusing to instruct the jury on the lesser included offense of manslaughter. We reverse and remand.

Testimony adduced at trial established that appellant, Fred Williams, Elbert Townsend and Johnny Griffin played cards on October 14, 1984, at Townsend's apartment. Griffin testified that appellant and his brother, Fred Williams, argued about appellant cheating. He observed appellant walk over by Fred Williams and pull out a knife. Fred Williams then grabbed a chair to try to protect himself. Griffin also stated that Fred Williams was backing up and that he "wasn't serious with the chair." He further stated that he saw appellant stab his brother three to five times.

Townsend testified that an argument broke out between appellant and his brother. Fred Williams stated to appellant, "Shut your mouth before I put my foot in it." Townsend stated appellant then told his brother that he would kill him first. Townsend testified that appellant had a knife in his hand and tried to swing at his brother. Townsend observed Fred Williams trying to block his brother's advances with a chair.

Appellant took the stand and testified that he and his brother got into an argument and Fred Williams scooted from the table quickly. Appellant did not know what was going on and he stood

up. His brother grabbed the chair and scooted back and appellant went into his pocket to get his knife out. Before he was able to get it out of his pocket, appellant stated his brother struck appellant with the chair on his left shoulder. Appellant testified he started swinging with the knife and upon observing blood coming from his brother, got scared and ran. He also stated that when he left the scene he observed that his brother had the chair and was on his feet. Appellant testified that he did not mean to kill his brother and that everything happened real fast.

Roy Jackson testified that on the night of October 14, 1984, appellant came to his home and asked to talk to him. He observed some blood on appellant's shirt and asked him about it. Appellant told him that he and his brother had gotten into a fight and that he had cut his brother. Appellant also told Jackson that his brother had picked up a chair and was going to hit him with it.

Frank Randolph testified that on October 14, 1984, appellant called him and wanted Randolph to pick him up. Appellant told Randolph that he had gotten into a fight with his brother and that he thought he had hurt him real bad. Randolph was subsequently stopped by the police on his way to pick appellant up.

Dr. Lee Beamer, the Associate Medical Examiner, testified that he performed an autopsy on Fred Williams. He stated that Fred Williams sustained five stab wounds to his person which were the cause of death. Toxicology tests performed established that Fred Williams had been drinking alcohol.

■■ The record in the case at bar reflects that appellant requested and proffered an instruction on manslaughter which the trial court refused. The basis of its refusal was that an instruction on manslaughter was not justified under the evidence of the trial. Manslaughter is committed by one who recklessly causes the death of another person. Ark. Stat. Ann. § 41-1504(1)(c) (Repl. 1977). "Recklessly" is defined as follows:

"Recklessly." A person acts recklessly with respect to attendant circumstances or a result of his conduct when he consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of a nature and degree that disregard thereof

constitutes a gross deviation from the standard of care that a reasonable person would observe in the actor's situation.

■ On the other hand, second degree murder is committed by a person if he knowingly causes the death of another person under circumstances manifesting extreme indifference to the value of human life or with the purpose of causing serious physical injury to another person, he causes the death of any person. Ark. Stat. Ann. § 41-1503(1)(b) and (c) (Repl. 1977). The jury in the instant case was instructed on this basis.

■ As noted by the Arkansas Supreme Court in *Robinson* v. *State*, 269 Ark. 90, 598 S.W.2d 421 (1980), no right has been more zealously protected than the right of an accused to have the jury instructed on lesser included offenses. "This is so, no matter how strongly the trial judge feels that the evidence weighs in favor of a finding of guilty on the most serious charge." *Id.* at 93, 598 S.W.2d at 423, 424. It is reversible error to refuse to give a correct instruction on a lesser included offense and its punishment when there is testimony furnishing a reasonable basis on which the accused may be found guilty of the lesser offense. *Glover* v. *State*, 273 Ark. 376, 619 S.W.2d 629 (1981). Where there is no evidence tending to disprove one of the elements of the larger offense the court is not required to instruct on the lesser one because absent such evidence there is no reasonable basis for finding an accused guilty of the lesser offense. In this type of case the jury must find the defendant guilty either of the offense charged or nothing. *Fisk* v. *State*, 5 Ark. App. 5, 631 S.W.2d 626 (1982). Where, however, there is the slightest evidence tending to disprove one of the elements of the larger offense, it is error to refuse to give an instruction on the lesser included one. *Brewer* v. *State*, 271 Ark. 254, 608 S.W.2d 363 (1980).

In this case there was evidence presented on which the jury might have found that appellant recklessly caused the death of his brother. While it appears most unlikely, the jury could have believed appellant's testimony and found that the criminal intent required for conviction of the larger offense was lacking. It is the jury's sole prerogative to evaluate the conflicting evidence and to draw its own inferences.

In *Savannah* v. *State*, 7 Ark. App. 161, 645 S.W.2d 694 (1983), this Court reversed the appellant's conviction and re-

manded for a new trial upon the trial court's refusal to instruct the jury on the lesser included offense of robbery. There, the appellant participated in a liquor store robbery and testified at trial that he did not know his riding companion had a weapon until after the robbery or that his companion intended to rob the store. Upon abandoning the car, appellant stated that they went in separate directions but met later at appellant's parents' home. The appellant claimed his companion later left the pistol at the house. The pistol was recovered at that address by the police. We noted in *Savannah* that it was the jury's sole prerogative to evaluate the evidence and draw its own inferences as to whether the appellant knew his companion had a pistol when the robbery was committed and why the pistol was recovered at appellant's residence after the robbery. Finally, we stated there that if the jury believed the appellant's version of the robbery, it could have found him guilty of robbery, not aggravated robbery.

In *Bongfeldt* v. *State*, 6 Ark. App. 102, 639 S.W.2d 70 (1982), we held that the trial court had committed prejudicial error in failing to instruct the jury on the lesser included offense of criminal trespass. Appellant had testified at trial that he entered the building intending to borrow some gasoline and pay the owner for it the next morning. This testimony provided evidence on which the jury might have found the appellant's entry was without the criminal intent required for conviction of the larger offense of burglary. We stated there that it was not impossible for the jury to have found the appellant guilty only of criminal trespass and reversed and remanded for a new trial.

We conclude that it was prejudicial error of the court in the case at bar to fail to give the proffered instruction on manslaughter and we therefore reverse and remand for a new trial.

Reversed and remanded.

COOPER and GLAZE, JJ., dissent.

JAMES R. COOPER, Judge, dissenting. I agree with the majority opinion when it states that it is reversible error to refuse to give a correct instruction on a lesser included offense when there is evidence furnishing a *reasonable* basis on which the accused could be found guilty of the lesser included offense. In the case at bar, however, I find no reasonable basis for giving an

instruction on manslaughter. Manslaughter requires a lesser degree of intent than does first or second degree murder, requiring only that the defendant acted "recklessly" (The proffered instruction referred only to subparagraph (c) of Ark. Stat. Ann. Section 41-1504 (Supp. 1985).).

In the case at bar, the appellant and the victim had been arguing over a card game, and the appellant, in response to the victim's threat to put his foot down the appellant's throat, told the victim that he would kill him first. Shortly thereafter, following a scuffle, the appellant stabbed the victim *five* times. According to the medical examiner, either of two of the stab wounds were fatal wounds.

I simply cannot agree that, where the appellant threatened to kill the victim and then stabbed him five times, a reasonable basis existed for a jury to find that the appellant "recklessly" caused his brother's death. I would affirm.