Bill BOREN, Jr. *v.* STATE of Arkansas

CR 88-37                               761 S.W.2d 885

Supreme Court of Arkansas
Opinion delivered December 5, 1988

*Joel W. Price*, for appellant.

*Steve Clark*, Att'y Gen., by: *J. Blake Hendrix*, Asst. Att'y Gen., for appellee.

STEELE HAYS, Justice. In this case, Bill Boren, Jr., appeals a conviction under Ark. Code Ann. § 4-90-204(d) (1987), failure to disclose the alteration of an odometer on a vehicle offered for sale. He has raised two issues on appeal, neither of which has merit.

Bill Boren, Jr. was operating a used car dealership under the name Boren Motor Company. The police received an anonymous tip that there had been some odometer "rollbacks" on cars connected to that dealership. Further investigations were conducted resulting in appellant being charged with four counts of tampering with odometers, Ark. Code Ann. § 4-90-204 (1987) [Ark. Stat. Ann. § 75-2402(4) (1979)].

On May 20, 1987, a jury trial was held in the Circuit Court of Crawford County, Arkansas. When the state rested its case, appellant moved for a directed verdict based on the state's failure to prove knowledge of alteration. The motion was denied and at the close of the appellant's case the motion was renewed and again denied. The jury returned a verdict of guilty on all four counts and imposed a fine of $1,000 on each count and additionally, a term of one year on count two.

I

██ On appeal, Boren first assigns error to the trial court's denial of his motion for a directed verdict. A motion for a directed verdict is a challenge to the sufficiency of the evidence, not to the nature or character of the evidence, and is proper only when no issue of fact exists. On review, we consider the evidence in the light most favorable to the appellee and affirm if there is any substantial evidence to support the verdict. Only testimony in support of the verdict need be considered. *David* v. *State*, 286 Ark. 205, 691 S.W.2d 133 (1985). Our responsibility is to determine whether the verdict is supported by substantial evidence, that is, whether the jury could have reached its conclusion without having to resort to speculation or conjecture. *Boone* v. *State*, 282 Ark. 274, 668 S.W.2d 17 (1984). We do not judge the credibility of witnesses, but instead weigh the evidence in the light most favorable to the appellee to see if there is substantial

evidence to support the verdict. *Thompson* v. *State*, 284 Ark. 403, 682 S.W.2d 742 (1985). Viewing the evidence in that light, we find the trial court's denial of the directed verdict was proper.

Appellant was prosecuted under Ark. Code Ann. § 4-90-204 (1987), which reads in part:

> (d) No person shall sell or offer for sale any motor vehicle with knowledge that the mileage registered on the odometer has been altered so as to reflect a lower mileage than the motor vehicle has actually been driven without disclosing such fact to prospective buyers.

We have not had occasion to interpret our odometer act, Ark. Code Ann. § 4-90-201 (1987) et seq., so we have looked for authority from cases under the federal act, 15 U.S.C.A. § 1981 (1982) et seq., which is very similar to the Arkansas act, and to acts in other states. For the state to prove its case against appellant under § 4-90-204(d) (1987), it was necessary to show that appellant had knowledge that the mileage registered on the odometers had been altered so as to reflect a lower mileage, and that he failed to disclose this fact to prospective buyers.[1]

To prove an alteration of an odometer was done with knowledge and, therefore, intentionally it has generally been held that if it is shown that the alteration took place while the automobile was under the dominion and control of the defendant or his agents the evidence is sufficient. *United States* v. *Hugh Chalmers Chevrolet-Toyota, Inc.,* 800 F.2d 737 (8th Cir. 1986); *State* v. *Kennedy,* 224 N.W.2d 223 (Iowa 1974); *State* v. *Biter,* 49 Del. 503, 119 A.2d 894 (1955); and see *United States* v. *Studna,* 713 F.2d 416 (8th Cir. 1983), where the evidence on this point was not challenged, but the court noted that on the odometer rollback charge the state had shown that the odometer

---

[1] While appellant does not raise this point, we note that in order to prove a defendant had knowledge of an odometer rollback, the state need not show any intent to defraud or any evil purpose. In a similar federal statute, the alteration of an odometer is a criminal offense if done "knowingly and willfully." 15 U.S.C. 1984, 1990(C). This was interpreted to mean only an intentional violation of a known legal duty, and nothing more was required than to show the intent to do the act. *United States* v. *Studna,* 713 F.2d 416 (8th Cir. 1983) ("Alterations performed with innocent motives have the same capacity to mislead purchasers as those done with evil motives.")

had been rolled back during the time the cars had been owned by the defendant and that this evidence was overwhelming.

Evidence of alteration is often circumstantial: usually it is shown by contrasting the higher odometer reading prior to the sale to the defendant and the lower reading at the time the defendant sells the vehicle to a customer. 1 Am. Jur. 2d *Proof of Facts* § 6 (1974); Billings, *Handling Automobile Warranty and Repossession Cases* § 8.24 (1984). Proof of the earlier higher reading has come from testimony of a previous owner, applications for certificates of title on file in the motor vehicle department, testimony of a mechanic or service manager who recorded the mileage on a repair order, or any official records citing the vehicle's odometer reading. 1 Am. Jur. 2d *Proof of Fact, supra*; Billings, *supra*; and see generally, Annotation *Unlawful Tampering with Odometer*, 76 A.L.R. 3d 981 (1977).

■ Here the state presented sufficient evidence to show the automobiles were under the dominion and control of appellant during the time the alteration took place. The state presented evidence regarding the four different cars that were purchased, which essentially related the sales transaction and the odometer reading on each car at the time of purchase. This testimony clearly established, with no dispute from appellant, what the lower reading was at the time of sale to appellant's customers.

The state also presented sufficient evidence to show the cars were under the control of the appellant at the time the vehicles showed a higher reading on the odometer. The four vehicles in question had been purchased from the 166 Auto Auction. Mary Jo Henson, the office manager of the auction presented invoices for each of the four cars. Each invoice identified the car and indicated the mileage registered on the odometer at the time it was auctioned. In each case, there was a difference ranging from 25,000 to 45,000 miles on the readings at the time of auction and the later sale by the appellant. The name of the buyer on each invoice was Boren Motor Company. The state also introduced a privilege license purchased by appellant, showing that Bill Boren, Jr. was authorized to operate under the name Boren Motor Company.

Appellant concedes he operated as Boren Motor Company, but contends the identity of the auction buyer was inconclusive, as

there was other evidence showing the cars had been purchased by Boren Wholesale Motors, a concern allegedly owned by his father, Bill Boren, Sr. Appellant refers us to a computer printout attached to each invoice, showing the buyer of each car was Boren Wholesale Motors and to testimony by Ms. Henson that both appellant and his father had been buyers at the auction in the past, and that she had no information as to the buyer on this occasion other than her records.

We are not persuaded by appellant's argument. Ms. Henson said when questioned further about the discrepancy between the invoice and the printout, that the invoices were made out first while the printouts were made out later by different clerks. At that point she indicated there was less formality and less concern with the preciseness of the information: "Sometimes it's just in a man's name; it may not be in his company name, but it just may be made in his name." From the evidence presented, it is a permissible inference that appellant had made the purchase as shown on the invoice, and because of the informality of further record keeping, a similarly named company was shown as the buyer on the printout. It is the jury's sole prerogative to evaluate the conflicting evidence and to draw its own inferences, *Williams* v. *State*, 17 Ark. App. 53, 702 S.W.2d 825 (1986), and the jury may draw any reasonable inference from the evidence presented, *Upton* v. *State*, 257 Ark. 624, 516 S.W.2d 904 (1974). We find there was sufficient evidence to show appellant's dominion and control over the vehicles during the time that the alteration of the odometers took place.

In addition to knowledge of the alterations, it was necessary for the state to show the vehicles were sold by appellant, without disclosing to the purchasers the alterations and the resultant lower mileage. The purchasers of the cars testified that while appellant had given them a completed disclosure form, there was no other attempt by him to disclose the alteration. In fact, he gave verbal reassurances to two of the customers that the odometers were correct to the best of his knowledge. The disclosure form, however, far from disclosing any alterations, indicated the opposite and there is no way we can find from the form that appellant had disclosed the required information.

Appellant had checked two statements on the disclosure

form. The first read: "I hereby certify that the odometer of said vehicle was not altered, set back, or disconnected while in my possession, and I have no knowledge of anyone else doing so." This statement is clearly the antithesis of disclosing that there had been an alteration of the odometer.

The second statement checked by appellant stated: "I certify that to the best of my knowledge, the odometer reading as stated above is not the actual mileage of the vehicle described below and should not be relied upon." Even considering this statement standing on its own, appellant has not given the required disclosure. This statement does not reveal that the reading is actually lower than what has been driven, but only that it is inaccurate. To merely say that the mileage is inaccurate is an ambiguous statement at best and could refer to any number of circumstances. It certainly does not equate to a disclosure that the odometer has been altered so as to reflect a lower mileage than the car has actually been driven. The statement not only misstates the facts as appellant knows them to be, but it deprives the customer of essential information and misleads him or her as to the true circumstances.

A similar situation was considered in *Ryan v. Edwards*, 592 F.2d 756 (4th Cir. 1979). In that case the court was reviewing the effect of a partial and misleading disclosure, analogous to those in this case. Under 15 U.S.C. § 1988 (the federal odometer disclosure statute) a disclosure must be made that "the actual mileage is unknown, if the odometer reading is known to the transferor to be different from the number of miles the vehicle actually traveled." In *Ryan* it was shown that the odometer had "turned over" after 99,000 miles so that the odometer reading was not an accurate reflection of the miles actually traveled, and this fact was known by the defendant. The form used by the defendant to make the disclosure provided a blank on which to record the odometer reading and a second blank on which to record the vehicle's total cumulative miles if over 100,000. The defendant filled in the low figure the car currently registered in the first blank, left the second blank empty and checked a box indicating that the true mileage was unknown. The defendant told the buyer that the car was a low mileage car but the odometer had been broken for a period of time and another 20,000 miles should be added to what the odometer registered to get an

approximate reading of the actual mileage. The court found that the disclosure provisions had been violated and stated:

> When a transferor who knows that an odometer has "turned over" merely records the numbers appearing on the odometer and certifies that the true mileage is unknown, the consumer is not simply deprived of accurate mileage information; he is actually misled by the form itself. We cannot believe that Congress intended to enact a statute requiring that consumers be given false or misleading information.

See also *Suits* v. *Little Motor Co.*, 642 F.2d 1883 (5th Cir. 1981).

■ Similarly, the evidence in this case showed that appellant had knowledge of the former higher readings and that he had altered the odometer to a lower reading. Yet his disclosure form indicated only that the mileage was not accurate. This disclosure not only deprived his customers of the odometer readings prior to alteration but misled them as to the facts as they actually were.

When we also consider the other statement checked on the form—that there had been no alteration of the odometers—the misleading character of the disclosure document becomes overwhelmingly predominant. If appellant were attempting to neutralize or qualify the false statement as to the alterations, by the second statement of inaccuracy, he has failed. When the statement on inaccuracy is read in conjunction with the statement and there has been no alteration, it becomes even clearer that the customer is not only deprived of essential information, but is misled as to the true nature of the facts.[2]

If we were to hold otherwise, a dealer could readily alter the odometers, warrant the opposite on the disclosure statement, and sell cars with impunity by checking a second ambiguous statement on the disclosure form. This cannot have been the intent

---

[2] This conclusion is also reflected in general contract principles, that is, when an express warranty is negated or limited by other language, the disclaimer must fall away. See *Walcott* v. *Steel*, 246 Ark. 95, 436 S.W.2d 820 (1969); Ark. Code Ann. § 4-2-316(1) (1987). So in this case, when appellant attempted to certify that the odometer reading was accurate, and in the next breath attempted to qualify that claim by stating he had no knowledge of the actual mileage, the disclaimer was of no effect.

underlying the required disclosure under state law, or the requirement of the federal disclosures. The purpose of disclosure of odometer information is to "enable the purchaser of a motor vehicle to know how many miles the vehicle has traveled, as a guide to its safety, reliability and value." *Ryan, supra.* If the dealers can manipulate the disclosure forms to suit their purposes, the customers would be better off without the required disclosure.

■ Appellant has also taken issue with the federal disclosure form itself, claiming full compliance to the extent the form allows. His argument is not entirely clear, but we note first that appellant was not prosecuted for non-compliance with, or making false statements on, the required disclosure form, (Ark. Code Ann. § 4-90-206) (1987), and to that extent, the argument is irrelevant. However, he objects to the disclosure form because there was no provision to check if he *knew* the odometer had been altered. As the disclosure form is a required procedure, appellant contends he was forced to choose from the options available, none of which, he claims, would reflect the true circumstances of his case. We take the point to be that his statements on the form were not competent evidence and should not have been admitted. But no such argument was made in the trial court, in fact, appellant expressly allowed the introduction of the disclosure forms without objection. Any argument on that basis fails for lack of an objection in the trial court.

## II

■ Appellant's second argument claims error in the trial court's denial of his motion for a new trial. The decision whether to grant a new trial rests with the sound discretion of the trial judge and will not be reversed in the absence of an abuse of discretion or manifest prejudice to the complaining party. *Foster v. State*, 294 Ark. 146, 741 S.W.2d 251 (1987); *Vasquez v. State*, 287 Ark. 468, 701 S.W.2d 357 (1985).

■ Appellant claims first that a new trial was required on the basis of newly discovered evidence. But that is not a favored ground for a new trial, *Vasquez, supra*, and evidence which is merely cumulative will not suffice. *Orsini v. State*, 281 Ark. 348, 665 S.W.2d 245 (1984). Given that, we find no error here because appellant's new evidence merely showed that Bill Boren, Sr. had

purchased seventeen cars from the the 166 Auto Auction. The evidence at trial had already shown that Boren Sr. was a purchaser from the auction, and the "newly discovered evidence" only added to that fact and shed no additional light on the four cars in question at the trial.

Appellant also claims the verdict was against the evidence, Ark. Code Ann. § 16-89-130(5) (1987). We considered this point earlier and find no argument presented that alters our decision on the sufficiency of the evidence to support the verdict, and therefore find no error in the trial court's denial of the new trial motion on this ground.

AFFIRMED.

PURTLE, J., DUDLEY, J., and NEWBERN J., dissent.

DAVID NEWBERN, Justice, dissenting. The appellant, Bill Boren, Jr., was convicted of four counts of violating Ark. Code Ann. § 4-90-204(d) (1987) which prohibits sale of an automobile with knowledge that the mileage on the odometer shows fewer miles than the automobile has actually been driven without disclosing that fact to the buyer. I agree with Boren's argument that a directed verdict should have been granted in his favor because the state's evidence showed that he disclosed to the buyers of the cars that the mileage shown on the odometers was not accurate and was not to be relied on by the buyers.

The state's witnesses included the purchasers of three cars from Boren Motor Company, owned and operated by Bill Boren, Jr. Chris Fox testified he bought a car from Boren, and Boren told him the odometer mileage was correct to the best of his knowledge. On cross-examination, Fox stated when he bought the car he received from Boren an "Odometer Mileage Statement." It is a statement made on a form which is prescribed by federal regulations, and it contains basic information about the car, including the mileage shown on the odometer at the time of sale. The form has two groups of three alternative statements. Only one in each group of three may be checked by the seller. Fox testified that on the form he received, the box next to the following statement was checked: "I certify that to the best of my knowledge, the odometer reading as stated above is not the actual mileage of the vehicle described below and should not be relied

upon." The second "not" was underlined. In the second group, the following statement was checked: "I hereby certify the odometer of said vehicle was not altered, set back or disconnected while in my possession, and I have no knowledge of anyone else doing so." Fox's signature, acknowledging receipt of a copy of the form appears at the bottom. The form is reproduced below.

Section 580.6 Disclosure form

## ODOMETER MILEAGE STATEMENT

(Federal regulations require you to state the odometer mileage upon transfer of ownership. An inaccurate or untruthful statement may make you liable for damages to your transferee, for attorney fees, and for civil or criminal penalties, pursuant to sections 409, 412, and 413 of the Motor Vehicle Information and Cost Savings Act of 1972 (Pub. L. 92-513, as amended by Pub. L. 94-364).

I, _Boren Motor Co._ (transferor's name - PRINT), state that the odometer of the vehicle described below now reads _25,426_ miles/kilometers.

Check one box only.

☐ (1) I hereby certify that to the best of my knowledge the odometer reading as stated above reflects the actual mileage of the vehicle described below.

☐ (2) I hereby certify that to the best of my knowledge the odometer reading as stated above reflects the amount of mileage in excess of designed mechanical odometer limit of 99,999 miles/kilometers of the vehicle described below.

☒ (3) I hereby certify that to the best of my knowledge the odometer reading as stated above is NOT the actual mileage of the vehicle described below, and should not be relied upon.

| MAKE | MODEL | BODY TYPE |
|------|-------|-----------|
| Dodge | Lancer | 4 Door |
| VEHICLE IDENTIFICATION NUMBER 1B3BX48D4FN137345 | | YEAR 1985 |

Check one box only.

☒ (1) I hereby certify that the odometer of said vehicle was not altered, set back, or disconnected while in my possession, and I have no knowledge of anyone else doing so.

☐ (2) I hereby certify that the odometer was altered for repair or replacement purposes while in my possession, and that the mileage registered on the repaired or replacement odometer was identical to that before such service.

☐ (3) I hereby certify that the repaired or replacement odometer was incapable of registering the same mileage, that it was reset to zero, and that the mileage on the original odometer or the odometer before repair was _____ miles.

Transferor's Address (seller) _1418 Fayetteville Rd._ (Street)
_Van Buren_ (city) _AR_ (state) _72956_ (zip code)

Transferor's Signature (seller) _Bill R Boren_

Date of Statement _3-9-87_

Transferee's Name and Address (buyer) _Christopher Fox 630 N 4th 13th_ (street)
_Van Buren_ (city) _AR_ (state) _72956_ (zip code)

Receipt of Copy Acknowledged _Christopher D. Fox_ (transferee's signature - buyer)

John Paschall testified he bought a car from Boren. He asked if it were not common practice for dealers to turn back odometers, and Boren replied that it was practically impossible to do it on the newer models with digital type odometers. On cross-examination, Paschall testified he received an odometer statement like the one given to Fox, disclosing that the odometer reading was not to be relied upon, and his wife signed it.

Jess Staggs testified he bought a car from Boren but kept it only two hours because his son, a police officer, told him to check the mileage, and he compared it with a statement (the origin of which he did not reveal) stating the car had been sold earlier in Springfield, Missouri, showing substantially higher mileage. His money was returned to him when he returned the car. He said nothing about any conversation with Boren about the mileage, but on cross-examination he confirmed receiving a mileage statement like those received by Fox and Paschall disclosing the alteration of the odometer and advising him not to rely on it.

A bank officer testified his bank had financed the purchase of a car from Boren by Herb Sharpe. He presented a copy of Sharpe's note and the title to the car which showed the mileage at the time the note was made. Also presented was a bill from Boren showing the mileage on the car.

At the conclusion of the state's case, Boren moved for a directed verdict on the ground that there had been no showing that he knew the odometers had been altered and that he had disclosed to the buyers that they could not rely upon the odometers as correct statements of the mileage on the cars. The motion was denied.

In his case in chief, Boren presented as an exhibit a disclosure statement to Sharpe like the others. The state thus presented three witnesses who testified they had received the disclosure forms from Boren with respect to the cars they purchased from him. As to the fourth car, the one purchased by Sharpe, the state presented no evidence whatever that the sale was made without the disclosure about which Boren testified.

Perhaps the heart of the state's brief is the following:

Boren knew that the odometer readings had been altered. As shown above, this was sufficiently proved by

circumstantial evidence [citations omitted]. With this fact in mind, the state proved beyond a reasonable doubt that Boren failed to meet the disclosure requirement of Ark. Code Ann. § 4-90-204(d) by failing to comply with Ark. Code Ann. § 4-90-206(a); knowing that the odometer readings were inaccurate, it was Boren's duty under Arkansas law to state that the mileage was unknown. By failing to do so, he failed to comply with the disclosure requirement. *But cf. Rider Oldsmobile, Inc.* v. *Wright*, 415 F.Supp. 258 (M.D. Penn. 1976).

Thereafter the state cites cases to the effect that statutes must be given an interpretation which meets the intention of the legislature and does not result in absurdity or injustice. Missing from the state's brief and from the majority opinion are citations to the cases holding that statutes which criminalize conduct must be construed strictly, *e.g., Knapp* v. *State*, 283 Ark. 346, 676 S.W.2d 729 (1984); *Dowell* v. *State*, 283 Ark. 161, 671 S.W.2d 740 (1984); *Clayborn* v. *State*, 278 Ark. 533, 647 S.W.2d 433 (1983). We recognized in *Knapp* v. *State, supra*, that we should also try to give effect to the intent of the legislature. We will not carry the interpretation so far as to favor the accused, *Clayborn* v. *State, supra*, to the extent of overruling the clear intent of the legislature, *Dollar* v. *State*, 287 Ark. 61, 697 S.W.2d 868 (1985). In this case, however, the statute is clear in its provision that it is the sale of a car having a rolled back odometer without disclosure that is against the law. We should not allow a conviction to stand where each of the witnesses on whose testimony the case stands or falls testifies the accused did the very thing which, according to the words of the statute, absolves him of guilt. The state has not shown that any sale was "without disclosure."

The odometer disclosure statement form used by Boren is the one federal law requires dealers to use in states which have not adopted an official form which meets federal requirements. *See* 49 C.F.R. 580.4, 580.6 (1987). We cannot know what the jurors thought, but it may be that they felt Boren had not told the truth when he stated on the form that the odometer on each of the cars was not rolled back while the car was in his possession and that he had no knowledge of anyone else doing so. There was, as the state argues, circumstantial evidence that the rollbacks occurred while the cars were in Boren's possession. That, however, if it is a crime,

is not one with which Boren was charged.

The majority opinion is intent on affirming this conviction because "the misleading character of the disclosure document becomes overwhelming predominate." It ignores the fact that the form used by Boren is the one he is required to use by federal law. The majority opinion states, "the customer was deprived of essential information and is misled as to the true facts." The point is that Boren was tried and convicted for selling a car with a rolled back odometer without disclosure. He was convicted of violation of a particular criminal law statute and not some vague concept of misrepresentation.

The effect of the majority opinion is not only to ignore the rule that we construe criminal statutes strictly, it ignores the provision in the statute which permits conviction only for sale of a vehicle with a lowered odometer reading "without disclosing such fact to prospective purchasers." Given the failure of the state's evidence to show any sale was made "without disclosure" the judgment of the trial court should be reversed, and the case dismissed.

I respectfully dissent.

PURTLE and DUDLEY, JJ., join this opinion.