Barry Lee FAIRCHILD *v.* STATE of Arkansas

CR 83-145                            681 S.W.2d 380

Supreme Court of Arkansas
Opinion delivered December 21, 1984

*Thompson, O'Bryan & Martin,* by: *Joe O'Bryan,* for appellant.

*Steve Clark,* Att'y Gen., by: *Jack Gillean,* Asst. Att'y Gen., for appellee.

WEBB HUBBELL, Chief Justice. Barry Lee Fairchild was tried and convicted of the capital murder of Marjorie Mason and was sentenced to death. For reversal appellant argues: 1) appellant was denied a neutral tribunal; 2) venue should have been in Pulaski County; 3) the Arkansas death penalty is unconstitutional; 4) sixteen photographs of victim should not have been admitted into evidence; and 5) eighteen additional points for reversal. We have carefully reviewed all issues raised, all other objections of appellant which were overruled, all rulings adverse to appellant, and the entire record for errors prejudicial to the rights of appellant. A.R.Cr.P. Rule 36.24 and Rule 11 (f) of the Rules of the Supreme Court. We affirm the conviction and the sentence imposed.

In the evening of February 26, 1983, an Arkansas State Trooper pursued two black males who were traveling at a high rate of speed in a vehicle belonging to Marjorie Mason,

but the occupants were able to escape on foot. The following day Marjorie Mason's body was found behind an abandoned farmhouse in Lonoke County. Ms. Mason had been kidnapped, robbed, raped, and then shot twice in the head. On March 4, 1983, Barry Lee Fairchild was apprehended in Pope County, Arkansas. Appellant was first taken to the local hospital for treatment of a head laceration, then taken to the Pope County sheriff's department, and finally transported to the Pulaski County jail.

The following day appellant gave a video taped statement implicating himself in the kidnapping, robbery, rape and shooting of Marjorie Mason. Appellant then went with police and sheriff's authorities on a tour of the crime scene and to his sister's home where a watch, later identified as belonging to Marjorie Mason, was obtained. Appellant was returned to the Pulaski County jail where he gave a second video taped statement.

Appellant's first arguments for reversal center around the jury selection process. Appellant complains that a question posed by the prosecutor to three jurors (one struck for cause, one excluded by a peremptory challenge, and one seated) was confusing and was used to exclude blacks from the jury. The prosecutor asked each of the three jurors if she would require the prosecutor to prove more elements than the law requires because of the severity of the death penalty. The first juror answered yes, she might require more evidence of defendant's guilt. After an attempt at rehabilitation by the trial court, the court found that the juror would still require more proof than was required by law. She was thus properly excused for cause. *Allen* v. *State*, 281 Ark. 1, 660 S.W.2d 922 (1983). It is not error for the court to strike for cause persons who cannot carry out the law. *Henderson* v. *State*, 279 Ark. 414, 652 S.W.2d 26 (1983). As to the juror excused by the use of a peremptory challenge, no explanation is necessary, and no error by the court is demonstrated. *Hill* v. *State*, 275 Ark. 71, 628 S.W.2d 285 (1982). As to the third juror, she was seated even though she answered affirmatively the prosecutor's question, so appellant's complaint of exclusion cannot apply to this juror.

Appellant also contends that potential jurors were improperly excluded in violation of the *Witherspoon* rule that a jury culled of all jurors who harbor doubts about capital punishment is "a tribunal organized to return a verdict of death." *Witherspoon* v. *Illinois*, 391 U.S. 510 (1968). In essence appellant is challenging the death qualification of prospective jurors. We clearly rejected this argument in *Rector* v. *State*, 280 Ark. 385, 659 S.W.2d 168 (1983).

Appellant also argues error in the jury selection process concerning a juror who should have been excused for cause because she told the court she would probably vote with the majority even though she might have reasonable doubt, and a juror who stated he had formed an opinion as to defendant's guilt. Appellant excused both of these jurors peremptorily. Appellant used all twelve of his peremptory challenges; however, no challenges for cause were made or denied after all his peremptory challenges were used. Therefore, appellant cannot show that he would have struck any juror who actually sat on the trial had he had a peremptory challenge remaining. Appellant failed to demonstrate prejudice since he is unable to show an objectionable juror was forced upon him without his having the privilege of exercising a peremptory challenge. *Singleton* v. *State*, 274 Ark. 126, 623 S.W.2d 180 (1981); *Conley* v. *State*, 270 Ark. 886, 607 S.W.2d 328 (1980).

Appellant next argues that venue should have been in Pulaski County, not Lonoke County, and relies on Ark. Stat. Ann. § 43-1417 (Repl. 1977) which provides: "Whenever two [2] or more counties, by the foregoing provision, have jurisdiction of the same offense, the county in which the defendant is first arrested shall proceed to try the offense to the exclusion of the other." One of the "foregoing provisions" is Ark. Stat. Ann. 43-1416 (Repl. 1977) which confers jurisdiction in a kidnapping to the county where it began, to all counties where it continued, and to the county where it terminated. Since Marjorie Mason was abducted in Pulaski County and then driven to Lonoke County, appellant's argument might have some merit were appellant tried for capital murder; venue, therefore, was proper where

the murder occurred, Lonoke County.

Appellant next argues that the trial court erred in admitting various photographs which appellant claims were inflammatory. The photographs included those of the exposed body of the victim at the crime scene depicting the nature and extent of the wounds and the condition of her clothing which had been torn during the rape. We have held many times that the decision to admit photographs lies within the sound discretion of the trial court and that decision will not be reversed absent a showing of clear abuse of discretion. *Fuller* v. *State,* 278 Ark. 450, 646 S.W.2d 700 (1983); *Gruzen* v. *State,* 267 Ark. 380, 591 S.W.2d 342 (1979). It does not matter that the photographs are cumulative to other evidence. *Perry* v. *State,* 277 Ark. 357, 642 S.W.2d 865 (1982). Even inflammatory photographs are admissible in the sound discretion of the trial judge if they tend to shed light on any issue or are useful to enable the jury to better understand the testimony or to corroborate the testimony. *Prunty* v. *State,* 271 Ark. 77, 607 S.W.2d 374 (1980); *Williams* v. *State,* 250 Ark. 859, 467 S.W.2d 740 (1971). We have reviewed each of the photographs and have determined that they could have been helpful to the jury in understanding the testimony of the witnesses in describing the scene as they found it after the murder. Although the photographs were somewhat graphic, we find no abuse of discretion.

Appellant next argues that Ark. Stat. Ann. § 41-1501 (Repl. 1977) is unconstitutional as applied in this case because it establishes an affirmative defense which impermissibly shifts the burden of proof to the defendant with respect to an essential element of the offense of capital murder. Ark. Stat. Ann. § 41-1501(2) (Repl. 1977) provides in pertinent part: "It is an affirmative defense to any prosecution under subsection (1)(a) for an offense in which defendant was not the only participant that the defendant did not commit the homicide act or in any way solicit, command, induce, procure, counsel, or aid its commission." We reviewed the constitutionality of Ark. Stat. Ann. § 41-1501(2) in *Moss* v. *State,* 280 Ark. 27, 655 S.W.2d 375 (1983) where we said that the statute in question does not absolve the state of the duty of proving the elements of capital felony

murder beyond a reasonable doubt. The burden on the defendant to prove an affirmative defense does not arise until the state has met its burden of proof as to the elements of the offense. *Moss* v. *State,* 280 Ark. 27, 655 S.W.2d 375 (1983). The defendant must then prove an affirmative defense by a preponderance of the evidence. Ark. Stat. Ann. § 41-110 (4) (Repl. 1977).

One of the appellant's 18 "other" points on appeal is that the death penalty constitutes cruel and unusual punishment in violation of the Eighth Amendment. This challenge was specifically rejected in *Ford* v. *State,* 276 Ark. 98, 102, 633 S.W.2d 3 (1982). However, we must always be willing to review this challenge in light of maturing standards of civilized society. We have previously noted in *Rector* v. *State,* supra, that the Arkansas General Assembly, in common with the legislatures in at least two thirds of the other states, reenacted a death penalty statute after the United States Supreme Court struck down all such laws in 1972. We said then that as judges we are under a duty to respect and give effect to the laws made by the people no matter what our personal beliefs might be. Our judicial commission is not a license to read our own reasoned values, however deeply felt, into the Constitution's clauses and impose them on the people of the State of Arkansas. Thus, after careful constitutional review we conclude that the Arkansas death penalty statute as a matter of law, as opposed to as a matter of personal conscience, does not violate the Eighth Amendment.

We have carefully reviewed appellant's other 17 points and find that none warrant reversal.

Affirmed.

HICKMAN, J., not participating.

PURTLE and HOLLINGSWORTH, JJ., dissent. See dissent in *Linell* v. *State,* 283 Ark. 162, 671 S.W.2d 741 (1984).