Dwight OWENS *v.* STATE of Arkansas

CR 88-156                                      777 S.W.2d 205

Supreme Court of Arkansas
Opinion delivered September 25, 1989

74

*Smith, Stroud, McClerkin, Dunn & Nutter*, by: *W. David*

*Carter*, for appellant.

*Steve Clark*, Att'y Gen., by: *David B. Eberhard*, Asst. Att'y Gen., for appellee.

TOM GLAZE, Justice. Appellant was convicted of capital murder for the death of L.D. "Buddy" Perkison. Appellant was accompanied by Ray Charles Eason when they robbed Perkison's gas station in Buckner, Arkansas, in Lafayette County, and during the robbery, Eason repeatedly stabbed Perkison resulting in his death. Appellant was tried separately and was sentenced to life imprisonment. In this appeal, he raises six points for reversal.

█ Appellant first contends that, based upon an alleged violation of A.R.Cr.P. Rule 8.1, the trial court erred in denying his motion to suppress his statement. Rule 8.1 provides that an arrested person who is not released by a citation or by lawful manner shall be taken before a judicial officer without unnecessary delay. This court has stated that Rule 8.1 is mandatory, not discretionary, and that while a violation does not call for dismissal of the charges, it does call for a suppression of the in-custodial statement. *Cook* v. *State*, 274 Ark. 244, 623 S.W.2d 820 (1981). Our review of the law and record reveals no violation of Rule 8.1.

█ In *Duncan* v. *State*, 291 Ark. 521, 726 S.W.2d 653 (1987), the court adopted a three-part test to determine when a statement should be excluded upon a violation of Rule 8.1: (1) the delay must be unnecessary; (2) the evidence must be prejudicial; and (3) the evidence must be reasonably related to the delay. In *Duncan*, we granted the defendant's motion to suppress his incriminating statement because the prosecutor and law enforcement officers deliberately (and for no reason) held Duncan incommunicado from about noon on Tuesday, March 5, 1985, until late the following Friday night—a three and one-half day period. Duncan initially gave only exculpatory statements until he finally confessed late on Friday. On those facts, we concluded the state violated all of the three-part test the court adopted in *Duncan*.

Here, while appellant was detained a two and one-half day period before giving his inculpatory statement and a three and one-half day period before being taken before a judicial officer, those are the only similarities between the situation before us now

and the facts in *Duncan*. In the cause at hand, the appellant was intoxicated when he was arrested in a bar at 2:00 a.m. on Saturday, June 27, 1987. The record reflects that the appellant was never kept from his family, friends or an attorney and that he had been mirandized on two separate occasions, *viz.*, when he was first incarcerated in the Lewisville jail in Lafayette County on June 27 and at 10:00 p.m. on the following Monday at the Columbia County Jail in Magnolia, where he had been taken for safekeeping. It was when he voluntarily waived his rights on Monday that the appellant offered his confession. Before his statement on Monday, appellant had never been interrogated; nor had he given a statement of any nature. From the record, an arraignment hearing apparently had been scheduled for appellant before the Lafayette County Circuit Court to be held on Tuesday, June 30, 197—which was the day after the appellant volunteered his statement to officers while he was still incarcerated in Columbia County on Monday, June 29.[1]

We are unable to say that, based upon the facts presented here, the trial court was wrong in ruling the three and one-half day period of delay between appellant's arrest and arraignment was reasonable. First, appellant was arrested and held over a weekend period. In *Brown* v. *State*, 276 Ark. 20, 631 S.W.2d 829 (1982), we held Rule 8.1 was not violated when a defendant was arrested late on a Friday and held through the weekend before he was able to be taken to a magistrate on the following Monday morning. As previously noted, appellant here was arrested early Saturday morning and the earliest he could have been arraigned was on the following Monday. Furthermore, unlike in *Duncan*, the record here reflects the appellant was not held incommunicado and denied access to family members, friends or an attorney.

Although appellant was first given his Miranda warnings in Lewisville immediately after his arrest, the officers decided not to interrogate or accept any statement given by him because of his intoxicated state. For appellant's own safekeeping, the officers

---

[1] The officers testified that they had not advised appellant of this scheduled arraignment hearing when he was read and waived his rights before giving his statement on Monday, June 30, 1987.

opted to take appellant to the Columbia County jail in Magnolia where he stayed throughout the balance of the weekend. The following Monday the officers returned to Magnolia to mirandize the appellant once again. At this time, the appellant volunteered and rendered his incriminating statement. Sometime during the time these events and circumstances were taking place, Judge Purifoy had also been contacted so as to arrange an arraignment hearing to be held in Lafayette County—where the robbery and homicidal act occurred. In view of the circumstances and events surrounding appellant's arrest, we have no hesitancy in holding that the time between his arrest and arraignment was necessary and that the confession he gave did not result from any undue delay caused by the state.

Appellant's next two arguments concern whether the trial judge erred when he failed to sequester the jury and when he denied appellant's motion for new trial because of jury misconduct. His claim regarding jury misconduct concerns a juror, Mary Dehan, who, appellant claims, had improperly discussed appellant's case with others after she was selected but prior to the actual trial. In arguing this point, appellant asserts that Dehan, when discussing appellant's case with others, revealed her previously concealed opinion as to appellant's guilt. We disagree.

Concerning appellant's claim as to Dehan, he presented post-trial testimony by Shirley Wewer who stated that sometime after Dehan was selected as a juror and prior to trial that Dehan appeared in a beauty shop, and while there, Dehan expressed that she was surprised at appellant's lack of emotion and that she felt "[appellant] was involved with the crime." Even if we were to accept appellant's contention that Dehan's remarks reflected her pre-conceived opinion as to appellant's guilt, we note that appellant never raised this issue until his motion for new trial, which was filed long after trial. In *Hendrix* v. *State*, 298 Ark. 568, 768 S.W.2d 546 (1989), we pointed out that a claim of jury misconduct raised for the first time in a motion for a new trial must be accompanied by an affirmative showing that the defense was unaware of the comments until after the trial. To allow otherwise would permit a defendant, privy to asserted jury misconduct during the trial, to await the outcome of the trial before investigating or pursuing such allegations further. In the present case, we are unaware of when the appellant first became

aware of the remarks now attributed to Dehan.

■ Regardless of appellant's failure to make an affirmative showing as to juror misconduct, we simply disagree with appellant that the comment attributed to Dehan was prejudicial. No one, including appellant, ever claimed he was not "involved" in some manner with the crime. To the contrary, appellant was a participant with Eason in the robbery. The major issue at trial became whether the appellant actually committed or in any way solicited, commanded, induced, procured, counseled or aided in Perkison's death. In sum, Dehan, on voir dire, indicated her willingness to keep an open mind as to appellant's guilt or innocence until after she heard the evidence, and we do not believe her willingness to do so was dispelled by the comments attributed to her—even assuming those comments were actually made at the time the appellant alleges.

■ Appellant also attempts to rely on the comments attributed to Dehan as being an example of why the trial judge should have sequestered the jury. Of course, the decision of whether or not to sequester the jury is left to the discretion of the trial court and that decision will not be disturbed in the absence of a clear showing of prejudice. *Henderson* v. *State*, 279 Ark. 414, 652 S.W.2d 26 (1983). Appellant simply fails to show any prejudice in this cause.

Appellant next argues that his equal protection rights have been violated by the state's use of peremptory challenges to strike black jurors. In this case, appellant is a black male and the victim was a white male. We find appellant's contention meritless.

■ In *Ward* v. *State*, 293 Ark. 88, 722 S.W.2d 728 (1987), we stated that a prima facie case of discrimination in the selection of jurors could be made by: (1) showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose, (2) demonstrating total or seriously disproportionate exclusion of blacks from jury venires, or (3) showing a pattern of strikes, questions, or statements by a prosecuting attorney during voir dire.

■ Unlike the all-white jury in *Ward*, the jury in this case included two black jurors. We note that when the two black jurors were accepted and seated to serve on the jury, the prosecutor still

had two peremptory challenges to employ. The prosecutor here also used only two peremptory challenges to strike black jurors while he used six to excuse white jurors. In challenging the two black jurors, the prosecutor struck one because the juror had been dozing and the other was excused because of his view regarding the death penalty. The record in this case falls far short of any showing of discrimination.

In his fifth point for reversal, the appellant appeals from the trial court's denial of his motion for a directed verdict. This court treats a motion for a directed verdict as a challenge to the sufficiency of the evidence. *Boren* v. *State*, 297 Ark. 220, 761 S.W.2d 885 (1988). On review of a denial of a motion for a directed verdict, the appellate court considers the evidence in the light most favorable to the appellee and considers only testimony in support of the verdict. *Id.* This court's responsibility is to determine whether the verdict is supported by substantial evidence, or whether the jury could have reached its conclusion without having to resort to speculation or conjecture. *Id.*

The applicable part of the capital murder statute provides that a person commits capital murder if:

> acting alone or with one (1) or more persons, he commits or attempts to commit . . . robbery . . . , and in the course of and in furtherance of the felony, or in immediate flight therefrom, he *or* an accomplice causes the death of any person under circumstances manifesting extreme indifference to the value of human life; (Emphasis added.)

Ark. Code Ann. § 5-10-101(a)(1) (Supp. 1987). A defendant is provided an affirmative defense under this section where the defendant was not the only participant if, "the defendant did not commit the homicidal act or in any way solicit, command, induce, procure, counsel, or aid in its commission." Ark. Code Ann. § 5-10-101(b) (Supp. 1987). The defendant has the burden to prove this affirmative defense by a preponderance of the evidence, but that a burden does not arise until the state has met its burden of proof as to the elements of the offense. *Fairchild* v. *State*, 284 Ark. 289, 681 S.W.2d 380 (1984).

Appellant, in his confession, stated that immediately prior to robbing Perkison's business, Eason had showed appellant a

kitchen knife. At that time, both Eason and appellant discussed robbing Perkison's store and the post office. Witnesses identified Eason and appellant as two men they saw in the vicinity of Perkison's store at the time Perkison was killed. In his statement, appellant admitted that he joined Eason in robbing the decedent's store, and while Eason repeatedly stabbed Perkison, appellant took money from the business's cash register. After appellant and Eason robbed the store, both changed their clothes. Appellant admitted he changed his shirt and pants and wiped off his shoes and then put on another pair of tennis shoes. Evidence presented at trial reflected that human blood was found on the cuff and leg of blue jeans owned by the appellant. The state also firmly proved that Mr. Perkison's death resulted from the wounds he sustained when Eason and appellant robbed the store.

Although the appellant does not seriously challenge the sufficiency of the evidence concerning the robbery or Perkison's death resulting from it, he still contends that his affirmative defense to the capital murder charge was shown because the state's evidence, including appellant's confession, reflects that appellant did not commit the homicidal act or in any way solicit, command, induce, procure, counsel or aid in its commission. We note, at this point, that the appellant offered no evidence of his own to prove his affirmative defense.

We have held that a defendant is required to prove an affirmative defense by a preponderance of the evidence, and the question as to which way the evidence preponderates is primarily a jury question. *Campbell* v. *State*, 265 Ark. 77, 576 S.W.2d 938 (1979). An affirmative defense is established as a matter of law only if there are no factual issues to be resolved by the trier of fact. *Leeper* v. *State*, 264 Ark. 298, 571 S.W.2d 580 (1978).

Appellant attempts to rely on his confession and the testimony given by the state's witnesses when arguing that he sufficiently proved he did not commit or participate in the act of killing Perkison. He argues that the great weight of the credible evidence shows that he did not stab Perkison or in any way aid in his murder. We cannot agree.

First, we note that credibility is for the jury to decide, *see McCaslin* v. *State*, 298 Ark. 335, 767 S.W.2d 306 (1989), and

while appellant asserts that only one reasonable inference can be made which reflects Eason solely caused Perkison's death, we believe the proof, at the very least, shows the appellant counseled and aided in killing the decedent. In so stating, we note that the definition of counsel includes the urging of the adoption of a course of action or the recommendation of a plan. *The Random House Dictionary of the English Language* (2nd ed. 1987).

As previously mentioned, appellant and Eason (by appellant's own statement) planned to rob a store in Buckner and had discussed Perkison's store and the post office. While going to Buckner, Eason showed a knife to appellant, and it can reasonably be inferred that appellant knew a lethal weapon would be employed in the planned robberies. Appellant actually dissuaded Eason from robbing one store in Buckner because a lady and baby were present. Instead, they decided to rob Perkison who was alone in his store. Based upon these facts, a jury could reasonably infer that the appellant *planned or counseled* with Eason to participate in a robbery which appellant knew would involve use of a lethal weapon. Appellant even redirected the robbery from another store to Perkison's store because Perkison was alone at the time. Appellant's confession revealed no suggestion that he was surprised Eason repeatedly stabbed Perkison, but instead appellant merely consummated the robbery by taking the money out of the cash register. In fact, the appellant's statement shows that he was standing by Eason when he first pulled the knife out in the store when Perkison's back was turned and when Eason began stabbing the decedent. Considering this evidence alone, a jury could have concluded appellant counseled and aided in Perkison's death.

Finally, the appellant contends that the trial judge erred in allowing into evidence one photograph of the crime scene and four autopsy photographs of the decedent's knife wounds. The trial judge excluded seventeen crime scene and autopsy photographs offered by the state. As gruesome as the death of this man was, the photograph of the crime scene which was introduced is very mild. While one can tell there is a lot of blood, the photograph is a small polaroid shot which is not very colorful or very close so as to reveal details.

The admissibility of photographs is in the sound discretion of the trial judge and will not be set aside absent an

abuse of that discretion. *Henderson v. State*, 291 Ark. 138, 722 S.W.2d 842 (1987). Even inflammatory photographs can be admitted if they shed some light on any issue or are useful to the jury. *Fairchild*, 284 Ark. 289, 681 S.W.2d 380.

In the present case, all of the photographs admitted were relevant. Each of the autopsy photos shows a different set of stab wounds, and as previously mentioned, only one photograph on the crime scene was admitted. We hold the trial court was correct in admitting these photographs.

In accordance with Ark. Sup. Ct. R. 11(f), we have received the record for all objections decided adversely to the appellant and have found no reversible error. For the reasons stated above, we affirm.

PURTLE, J., concurs.

JOHN I. PURTLE, Justice, concurring. I concur in the result reached by the majority because I find the improper conduct of the juror not to be prejudicial under the circumstances. My purpose in writing, however, is to clarify what I consider to be a misleading statement.

The majority opinion asserts: "[W]e note that appellant never raised this issue until his motion for a new trial, which was filed long after the trial." That statement and the one following it, might lead one to believe that an objection to the misconduct of a juror must be lodged at or before the time for filing a motion for a new trial.

In the present case, there was no dispute that the appellant did not know of the alleged misconduct until after the filing of a motion for a new trial. There is absolutely nothing wrong with filing a motion to set aside on the basis of jury conduct after a motion for a new trial has been made, provided that this information was not known at the time of the motion.