Craig Martin RYAN *v.* STATE of Arkansas

CR 90-72 798 S.W.2d 679

Supreme Court of Arkansas
Opinion delivered November 12, 1990
[Rehearing denied December 10, 1990.*]

*Wilson & Associates, P.A.,* by: *Jack T. Lassiter,* for appellant.

*Steve Clark,* Att'y Gen., by: *Clint Miller,* Asst. Att'y Gen., for appellee.

OTIS H. TURNER, Justice. The appellant, Craig Ryan, was convicted on charges of possession of cocaine with intent to deliver, possession of marijuana with intent to deliver, and possession of drug paraphernalia; he was sentenced to a total of

---

*Price, J., would grant rehearing.

sixty years imprisonment. In appealing the convictions, the appellant contends, first, that the admission into evidence of his statement given to law enforcement officers four days after the arrest and prior to his arraignment was error and, second, that the trial court should have suppressed the evidence seized in a warrantless search of the appellant's vehicle. Finding no error, we affirm.

Chief of Police Robert Wochner of the Bull Shoals Police Department found the appellant's unattended and disabled automobile on the side of Highway 178 on August 18, 1989. Shortly after Chief Wochner's arrival, the appellant appeared with a tire and sought the assistance of the officer in moving the car from the roadway. Prior to permitting the appellant to operate the vehicle, Chief Wochner requested Ryan to produce an operator's license and proof of insurance as required by Arkansas law. Ryan could produce neither and was therefore arrested and taken to the Marion County Sheriff's Department where the officer also directed the auto be towed.

After the appellant was processed at the Marion County Sheriff's Office, Chief Wochner proceeded with an inventory search of the vehicle, a procedure routinely followed when an automobile is impounded. In the course of the search, the officer discovered five plastic pouches containing a white crystalline powder (later identified as cocaine) and drug paraphernalia in a pillow case located near the driver's seat of the automobile. At that point, the inventory search was terminated and a search warrant was obtained from the municipal judge.

Upon returning to the appellant's car, Chief Wochner, accompanied by state police and county officers, completed the search pursuant to the warrant. The search yielded a quantity of marijuana, two hollow aluminum baseball bats containing cocaine residue, and other items of drug paraphernalia. Officers also found a passport and other documents indicating Ryan had been in Colombia.

During the afternoon of August 18, prior to questioning, the appellant was advised by the officers of his *Miranda* rights. When questioned, Ryan gave the officers general information but made no incriminating statements.

On August 21, the appellant, without solicitation, advised Chief Wochner that he might be willing to discuss his situation with federal agents. On the following day, August 22, the appellant was again advised of his *Miranda* rights, which he acknowledged by initialing a form provided to him. Thereafter, the appellant, without an attorney being present, gave an incriminating statement in the presence of Chief Wochner, a United States Drug Enforcement Administrative agent, and two United States Customs Service Agents. The statement was introduced at the subsequent trial.

The appellant told the investigating officers that he had been to Colombia several times and that he had brought three pounds of cocaine into the United States using the hollow baseball bats. He stated that he bought cocaine in Colombia for $1,700 per pound, had flown into Mexico, and on two separate occasions had walked across the border at Brownsville, Texas, with the bats. The first time he carried one pound of cocaine and the second time two pounds. Ryan said this was his personal cocaine to sell to make more money to return to Colombia for a larger deal. During the course of the interview, Ryan expressed an interest in being released and sent to Colombia where he could work as an undercover agent for the Drug Enforcement Administration.

The appellant had not been arraigned at the time the incriminating statement was given. Further, he was not arraigned until August 28, 1989, ten days after the arrest.

Arkansas Rule of Criminal Procedure Rule 8.1 directs that "An accused person who is not released by citation or by other lawful manner shall be taken before a judicial officer without unnecessary delay." The appellant's first point for reversal turns on the interpretation of the phrase "unnecessary delay." In *Duncan* v. *State*, 291 Ark. 521, 726 S.W.2d 653 (1987), we noted that neither the rule nor the commentary to the rule provides guidance in interpreting the meaning of the term or the effect a violation would have on the admissibility of evidence procured during such a delay. Although we considered authorities that established fixed time limits for taking an accused before a judicial officer in determining the voluntariness of a confession, this court did not decide upon a specific time limit. Instead, we adopted the Pennsylvania three-part test, set forth in *Common-*

*wealth* v. *Davenport*, 370 A.2d 301 (Pa. 1977), requiring that in order for evidence obtained from a statement voluntarily made to be rule inadmissible: "(1) the delay must be unnecessary; (2) the evidence must be prejudicial; (3) *the evidence must be reasonably related to the delay.*" 291 Ark. at 529. (Emphasis in original.) In *Duncan*, the appellant was mildly retarded, was neither given a *Miranda* waiver form to sign nor asked whether he waived his rights, and was kept incommunicado for three-and-a-half days, after which he gave an inculpatory statement. As a result, all three requirements were deemed to be satisfied, and the confession was excluded as evidence.

The appellee concedes that the first two elements of the test — unnecessary delay between the time of arrest and arraignment and prejudicial statement — are present. Only the difficult issue of the relationship, if any, of the evidence to the unnecessary delay remains to be considered. The record in this case establishes that at the time of Ryan's arrest on Friday, August 18, 1989, the earliest time at which he could be expected to be taken before a judicial officer and arraigned would have been on the following Tuesday, August 22. On Monday, August 21, the appellant suggested or requested an audience with federal officials which was accomplished the following day, August 22. There is no showing why the appellant could not have been arraigned prior to the confession conference on Tuesday; however, it does not appear that the appellant, who was seeking to secure the best deal possible from the state and federal officials, would have likely acted any differently had his arraignment occurred prior to the conference.

The real issue here is not whether the ten-day delay before the appellant's appearance before a magistrate was unreasonable and unnecessary: it was. The crux of the matter is whether or not the failure to arrange for the appellant's appearance during the period from Friday afternoon to shortly before noon on Tuesday was unnecessary and prejudicial and whether the confession given on Tuesday was reasonably related to that delay.

In *Branscomb* v. *State*, 299 Ark. 482, 774 S.W.2d 426 (1989), the defendant arrived at jail on a Thursday and the following Friday morning waived his rights and gave inculpatory statements to a police investigator. The following Monday he was

taken before the municipal court, which met only on Mondays. We held the evidence to be admissible and unrelated to the delay. In distinguishing *Branscomb* and *Duncan*, we noted that, unlike the defendant Branscomb, Duncan was held incommunicado for three days; further, in *Duncan*, the officers admitted their verbal abuse.

In *Owens* v. *State*, 300 Ark. 73, 777 S.W.2d 205 (1989), where the defendant was detained two-and-a-half days before giving an inculpatory statement and three-and-a-half days prior to his appearance before a judicial officer, we held that the statement was not reasonably related to the delay. We again recited the distinctive factors set forth in *Duncan*, where the criteria was established, and distinguished *Owens* by pointing out that Owens was not denied access to family members, friends, or an attorney. 300 Ark. at 77, 777 S.W.2d at 206-207.

We recognize the subjective nature of the "reasonably related" test. However, we are not here saying that the holding of an accused incommunicado or the subjecting of the accused to verbal abuse or threats or the denying of access to family or friends are requirements for satisfying the third prong of the *Duncan* test. By the same token, we are not prepared to say that the mere passage of time from Friday afternoon to Tuesday morning in this instance necessarily indicates that the statement is related to the delay. Each case must be considered taking into account the totality of the circumstances. Under the circumstances existing in the present case, we find that the inculpatory statements given by the appellant to the officials were not reasonably related to any delay but were apparently prompted by Ryan's desire to negotiate a bargain with authorities to his advantage.

The appellant next contends that the trial court erred in not suppressing the evidence seized from the automobile because (1) the state did not provide sufficient proof of standard police procedures, and (2) the search was pretextual.

In his pretrial motion to suppress, the appellant alleges the officials conducted a warrantless search in violation of the Arkansas and United States Constitutions: the search was made without consent and, in the absence of any exigent circumstances, violated the Arkansas and United States Constitution; during the

course of the warrantless search, the appellant's property was seized in "violation of the defendant's Fourth and Fourteenth Constitutional Amendment Rights."

Chief Wochner testified that every time a vehicle is impounded at the Marion County Sheriff's Office it is inventoried. At the commencement of the inventory of the contents of Ryan's automobile, Wochner found on the front seat in the driver's area, a pillow case containing a "hard solid object" which he retrieved and which proved to be an item of drug paraphernalia. Upon looking at the remaining contents of the pillow case, he discovered five plastic bags containing what later proved to be cocaine. At that point, officers terminated the inventory and secured a warrant before resuming the search.

In *Colorado* v. *Bertine*, 479 U.S. 367 (1986), the United States Supreme Court recognized inventory searches as a well-defined exception to the warrant requirements of the Fourth Amendment and held that such an inventory may be "reasonable" under the Fourth Amendment even though conducted without a warrant. In so holding, the Court noted that the policies behind the warrant requirement and the related concept of probable cause are not implicated in the inventory search, which serves the strong governmental interest in protecting an owner's property while it is in police custody, insuring against claims of lost, stolen, or vandalized property, in guarding the police from danger.

It was shown in the court below that automobile inventories were part of a regular procedure employed by the Bull Shoals Police Department and the Marion County Sheriff's Department on impounding a vehicle. This standard procedure establishes the non-pretexual character of the search.

The appellant contends that the fact that a detailed inventory of the contents of the automobile was never completed indicates that the search was commenced on the pretext of an inventory but was in fact a warrantless search in violation of the accused's constitutional rights. We do not agree. The established policy was in effect and, upon the first discovery of contraband, officers properly terminated the inventory search and subsequently commenced a search pursuant to a valid warrant. The record in the case reveals that a "Vehicle Impoundment Record"

was completed and filed. Under the section "Inventory and Vehicle: When Impounded" is appears that the inventory was terminated due to "Need to Obtain Search Warrant." Further, numerous personal items were left in the vehicle, including camping gear. The record also reveals that the return made on the search warrant includes a detailed listing of items found in the car.

Finally, the appellant contends that the inventory search was invalid because it was not conducted pursuant to any written guidelines established by the Bull Shoals Police Department or the Marion County Sheriff's Office. For authority, the appellant cites *Florida* v. *Wells*, 100 S.Ct. 1362 (1990), which had not been decided at the time of Ryan's suppression hearing. In any event, the appellant made no objection at the trial level to an absence of written guidelines and is precluded from raising that issue for the first time on appeal. *See Shaw* v. *State*, 299 Ark. 474, 773 S.W.2d 827 (1989).

The standard of review by this court of a denial of a motion to suppress evidence is well established. In reviewing the trial court's denial of the motion to suppress, this court makes an independent examination based on the totality of the circumstances and reverses the trial court only if the decision was clearly against a preponderance of the evidence. *Campbell* v. *State*, 294 Ark. 639, 746 S.W.2d 37 (1988); *McQueen* v. *State*, 283 Ark. 232, 675 S.W.2d 358 (1984). On appeal, this court considers the facts in the light most favorable to the appellee. *Holden* v. *State*, 290 Ark. 458, 721 S.W.2d 614 (1986).

Finding no error, we affirm.

PRICE, J., dissents.

DALE PRICE, Justice, dissenting. My disagreement with the majority concerns the admission of the appellant's statement which was given to law enforcement officers four days after his arrest and six days prior to his arraignment. It is my view the trial court erred in denying the appellant's motion to suppress, and I would reverse and remand for a new trial in which the statement is inadmissible.

Pursuant to the Pennsylvania three-part test adopted by this court in *Duncan* v. *State*, 291 Ark. 521, 726 S.W.2d 653 (1987),

the majority holds the appellant's incriminating statements were not reasonably related to the ten-day delay. This court concedes the delay was "unreasonable and unnecessary," and acknowledges there was no showing why the appellant could not have been arraigned prior to giving his statement to officers later Tuesday morning.

The appellant was arrested around noon on Friday. A search warrant was subsequently obtained from Judge Bearden, and his vehicle was searched at approximately 4:15 p.m. Upon being advised of the greater charges filed against him, the appellant indicated he had no statement to make. The evidence was controverted as to who initiated a meeting with federal officers. The appellant testified Officer Carr approached him in this regard Saturday morning. Officer Carr could not recall when the conversation with the appellant took place but stated "I did advise you [appellant] that maybe the federals would be interested in you. I sure did." Chief Wochner testified he was informed on Monday by another officer that the appellant wanted to talk to him about meeting with federal agents and possibly working out some kind of deal.

Arraignments on criminal charges were conducted on Tuesdays, and there is absolutely no showing on the state's part as to why the appellant could not have been arraigned prior to his Tuesday meeting with federal officers. It is conjecture on the majority's part to assume the appellant would not have acted differently if his arraignment had taken place prior to this meeting.

The purpose of an arraignment without necessary delay is to notify the accused of the charge or charges placed against him and to see that he has an attorney to represent him. To affirm a ten-day delay before arraignment, as in this case, is an open invitation for an accused to be held as long as desired prior to arraignment in the hope he will, for whatever reason, make some incriminating statement without benefit of counsel.

Rather than place the burden on the accused to prove the statement given was a result of the unreasonable delay, I would instead place the burden on the state to show why the delay was necessary. The state is in a better position to explain why the appellant was held for ten days without arraignment in this

instance than the appellant is to prove his statement was the result of that delay.

In *Cook* v. *State*, 274 Ark. 244, 623 S.W.2d 820 (1981), the defendant was arrested on October 12, charged on October 14, appointed counsel on October 29, and taken before a judicial officer on November 13. During this period he gave an incustodial statement. This court held the trial court properly refused to dismiss the charges inasmuch as dismissal was not the appropriate remedy. The court quoted A.R.Cr.P. Rule 8.1 and then stated:

> We adhere to our standard that this rule is mandatory, not discretionary, but that violation of it does not dictate a dismissal of the charges. *Bolden* v. *State*, 262 Ark. 718, 561 S.W.2d 281 (1978). This standard, like those of searches and seizures, represents a necessary accommodation between the individual's right to liberty and the State's duty to control crime. On the limited issue of dismissal, the scales are tipped in favor of the State for when the defendant is found guilty he has suffered no prejudice as a result of being in jail. The remedy is to suppress the in-custodial statement, as was done. . . .

In this case the charges should not be dismissed, but the statement should have been suppressed.