Clyde Elvis WALKER *v.* STATE of Arkansas

CR 91-86                                            825 S.W.2d 822

Supreme Court of Arkansas
Opinion delivered March 2, 1992

500

*Hartenstein Law Firm*, by: *J. Blake Hendrix*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Sandy Moll*, Asst. Att'y

Gen., for appellee.

TOM GLAZE, Justice. Appellant appeals from his convictions of two counts of capital murder for which he received two consecutive life sentences. Appellant's convictions resulted from charges filed pursuant to Ark. Code Ann. § 5-10-101(a)(1) (Supp. 1991) alleging that, while armed with a gun, he and four others robbed Art's Liquor Store, and during the course of the robbery, appellant or one of his accomplices caused the deaths of the store owner, Thomas Findley, and an employee, Charlotte Fowler. Appellant argues five points for reversal, but none of them have merit. Thus, we affirm.

We first consider appellant's argument that the trial court erred in failing to grant his motion for directed verdict. This court treats a motion for a directed verdict as a challenge to the sufficiency of the evidence. *Owens* v. *State*, 300 Ark. 73, 777 S.W.2d 205 (1989). In review of a denial of a motion for directed verdict, the appellate court considers the evidence in the light most favorable to the appellee and considers only testimony in support of the verdict. *Id.*

The state clearly met its burden of proving the elements of capital murder-robbery under § 5-10-101(a)(1). In a statement, appellant admitted that he and one of his accomplices, Prince Johnson, each had a gun when they entered Art's Liquor Store. Three others stayed in a car parked outside with one or two of its doors open. While appellant's statement reflected he had no knowledge that Johnson intended to rob or kill anyone, appellant acknowledged that, at some point, perhaps even before the robbery, he had understood or thought Johnson and one of the other men in the car had planned to rob the store. Nevertheless, after appellant and Johnson entered the store, appellant apparently asked Findley or Fowler for potato chips and then heard shots. Johnson then asked appellant to get the money out of one of the cash registers, which he die. It was at this stage, or immediately afterwards, that the appellant claims he first learned Johnson had killed Findley and Fowler. They left the store, entered their car and sped away. Later, the stolen money was split between the five men.

We have repeatedly held that a person need not take an active part in a murder to be convicted if he accompanies another

who actually commits the murder, and he assists in the commission of the crime — in this case, the crime of robbery. *White* v. *State*, 298 Ark. 55, 764 S.W.2d 613 (1989). The state's evidence clearly supports the verdict finding the appellant guilty of capital murder.

■ As an affirmative defense to the capital murder charge, appellant contends the evidence showed he did not commit the homicidal act or in any way solicit, command, induce, procure, counsel or aid in its commission. Ark. Code Ann. § 5-10-101(b) (Supp. 1991). Once the state has met its burden of proof as to the elements of the offense, the burden is on the defendant to prove an affirmative defense. *Moss* v. *State*, 280 Ark. 27, 655 S.W.2d 375 (1983). We have held that a defendant is required to prove an affirmative defense by a preponderance of the evidence, and the question as to which way the evidence preponderates is primarily a jury question. *Owens*, 300 Ark. 73, 81, 777 S.W.2d 205, 209.

■ Here, appellant claims he was unaware Johnson planned to rob or kill anyone, and although he and Johnson bore guns upon entering the liquor store, he denied having displayed or used his gun in the homicides. The jury, or course, did not have to believe appellant's story, especially when he acknowledged thinking Johnson and another accomplice had planned to rob the store. However, it was Johnson and appellant, not another accomplice, who left the car with its doors standing open as though stationed for a fast getaway. Further, it was appellant who entered the store with Johnson. Appellant then preoccupied the man (Findley) at one cash register by offering to pay for chips, and at this time, Johnson apparently killed both Fowler and Findley. Again, while appellant denied knowing what Johnson was doing when the homicides occurred, the state's evidence showed both victims had been shot within close range (within two or three feet), thus, if believed, placed appellant near Johnson at the time Johnson began shooting. Based upon these facts, the jury could have reasonably concluded the appellant aided Johnson in killing the two victims.

Appellant next argues error resulted from the deputy prosecutor misstating the law to the jury regarding appellant's affirmative defense. As mentioned above, a defendant, under § 5-10-101(b), is provided an affirmative defense in a robbery-capital

murder case when the defendant was not the only participant and if the defendant did not commit the homicidal act or in any way solicit, command, induce, procure, counsel, or aid in its commission. *See Owens*, 300 Ark. 73, 80, 777 S.W.2d 205, 209.

In closing argument, the deputy prosecutor misspoke, indicating the appellant had not met his burden regarding his affirmative defense because the evidence showed he aided in the robbery. Appellant objected, correctly explaining to the trial judge that all appellant had to show was that he did not aid in the commission of the homicides. The judge agreed, and asked how appellant wanted to cure the deputy prosecutor's misrepresentation. Appellant responded, requesting the judge to "read the instruction and say the homicide offense." The judge said, "The instructions there. You [deputy prosecutor] drop your argument." Appellant concluded by thanking the judge.

Later, the trial judge told appellant that he believed rereading the affirmative defense instruction would be unavailing since the jury would be given the instruction when it deliberated. The judge added the he would reread AMCI 101 or, within reason, do anything else the appellant might suggest. Although appellant preferred the affirmative defense instruction be reread, he told the judge to reread AMCI 101, which the judge did. Appellant never moved for a mistrial until after the verdict. By then, appellant's motion was untimely. *Dumond* v. *State*, 290 Ark. 595, 721 S.W.2d 663 (1986). In addition, the appellant cannot agree with a ruling of the trial court and then attack that ruling on appeal. *Gilbert* v. *State*, 277 Ark. 61, 639 S.W.2d 346 (1982).

Appellant next argues his statement should have been suppressed by the trial court because the statement was the product of an illegal stop and detention. Several days after an arrest warrant was issued for appellant for his role in the Findley and Fowler homicides, appellant was eventually found with a friend who was stopped by a police officer for a traffic violation. Actually, appellant's friend, Keisha Mitchell, was driving and appellant and another male were passengers when Mitchell was stopped for a moving violation. The officer asked Mitchell for identification and why she was not in school, and when he asked appellant for the same information, appellant gave an alias and

added that he went to Central High. After the officer attempted to call the school authorities at Central High, appellant changed his story, stating he had been expelled from J. A. Fair High School. Because appellant (and his male friend) had lied, the officer decided to take them to the precinct. On the way, appellant informed the officer that the police were looking for him. The officer promptly instructed him to remain quiet. After arriving at the precinct, the appellant was read his *Miranda* rights, and he then gave his statement.

■  Clearly, there is nothing to indicate a pretextual stop of Mitchell's car, and once stopped, the officer had the right to detain any unsupervised school-age student located off school premises. Ark. Code Ann. § 6-18-221(c) (Supp. 1991). Under § 6-18-221(d), an officer has the authority, among other things, to take a student to the police department when the student fails to produce sufficient documentation. In view of the appellant's various misrepresentations, the police officer acted properly in all respects.

Appellant also contends the trial court erred in prohibiting him from presenting evidence in support of his motion to dismiss for double jeopardy. His first trial on these capital murder charges resulted in a mistrial, but appellant claims jurors at that trial told him that, while jurors were unable to reach a verdict on lesser charges, the jury members all decided appellant was not guilty of the capital murders. Appellant concedes those jurors were never polled.

■  The trial judge in this case ruled it was improper to continue the trial to permit appellant to obtain the presence of the jurors who sat on the first trial, so they could testify on what appellant characterizes as a "partial verdict." Although appellant refers to a "partial verdict" when discussing the murder charges, the short answer to his argument is that the first trial resulted in a hung jury which produced no verdict at all. No double jeopardy issue exists, and the trial court did not abuse its discretion in denying appellant's motion for continuance. *Stone* v. *State*, 290 Ark. 204, 718 S.W.2d 102 (1986).

For his last argument, appellant attempts to raise a *Batson* issue, and argues the state violated his equal protection rights by peremptorily challenging jurors solely on account of their race.

Appellant is black.

■ In *Batson* v. *Kentucky*, 476 U.S. 79 (1986), the court held that a defendant who could make a prima facie case of purposeful discrimination shifts the burden to the state to prove the exclusion of jurors is not based on race. Our court has explained that a prima facie case may be made (1) by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose, (2) by demonstrating total or seriously disproportionate exclusion of blacks from any jury venires, or (3) by showing a pattern of strikes, or questions and statements by a prosecuting attorney during voir dire, *White* v. *State*, 298 Ark. 55, 764 S.W.2d 613 (1989). Appellant failed in proving a prima facie case of purposeful racial discrimination.

Here, four black jurors were seated. Thus, black members represented one-third of the members on the jury, yet the county had only a twenty to twenty-two percent black racial mix. In addition, the prosecutor still had peremptory challenges remaining at the end of voir dire.

■ Appellant also fails to point to any questions or statements by the deputy prosecutor in appellant's attempt to show purposeful discrimination. He does contend that the deputy prosecuting attorney used more of his peremptory challenges to exclude black veniremen who equivocated on whether they would impose the death penalty than on white jurors voicing the same reluctance. Appellant fails to set out any colloquy hearing on his claim, and our reading of juror responses concerning the death penalty issue does not necessarily support appellant's charge that the non-black jurors were reticent to return a death sentence. Finally, even though appellant failed to make a prima facie case, the state offered the racially neutral reason that the black jurors peremptorily struck expressed difficulty with applying the death penalty. The record is wholly inadequate to support a *Batson* claim.

In accordance with Ark. Sup. Ct. R. 11(f), the record of the proceedings has been examined, and the court has determined that there are no rulings adverse to appellant which resulted in prejudicial error. For the reasons set out above, we affirm the trial court's rulings and judgment.