John Richard LUKACH, Jr. *v.* STATE of Arkansas

CR 91-279                                              835 S.W.2d 852

Supreme Court of Arkansas
Opinion delivered June 29, 1992

*Larry W. Horton*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Sandy Moll*, Asst. Att'y Gen., for appellee.

DONALD L. CORBIN, Justice. Appellant, John Richard Lukach, Jr., appeals from a judgment of the Hot Spring Circuit Court convicting him of the rapes of his two nieces. The informations charging appellant alleged the girls were aged nine and seven years at the time the rapes were committed during the month of August 1990. After a jury trial on August 14, 1991, appellant was sentenced to two life terms in the Arkansas Department of Correction. He raises five arguments on appeal. All five arguments are without merit. We affirm.

## SUFFICIENCY OF THE EVIDENCE

■ The last of the five arguments raised in appellant's brief is that the trial court erred in denying his motion for directed verdict based on insufficient evidence. We treat a challenge to the denial of a motion for directed verdict as a challenge to the sufficiency of the evidence. *Walker* v. *State*, 308 Ark. 498, 825 S.W.2d 822 (1992). Based on the holding in *Burks* v. *United States*, 437 U.S. 1 (1978), that the double jeopardy clause precludes a second trial when a conviction in a prior trial was reversed solely for lack of evidence, we have determined that preservation of an appellant's right to freedom from double jeopardy requires a review of the sufficiency of the evidence prior to a review of trial errors. *Smith* v. *State*, 306 Ark. 483, 815 S.W.2d 922 (1991); *Harris* v. *State*, 284 Ark. 247, 681 S.W.2d 334 (1984). Therefore, we consider appellant's last assignment of error, the challenge to the sufficiency of the evidence, prior to considering his other assignment of trial error.

■ The test for determining the sufficiency of the evidence is whether there is substantial evidence to support the verdict; substantial evidence must be forceful enough to compel a conclusion one way or the other beyond suspicion and conjecture. *Gillie* v. *State*, 305 Ark. 296, 808 S.W.2d 320 (1991). On review, it is only necessary for us to ascertain that evidence which is most favorable to appellee and, if there is substantial evidence to support the verdict, we affirm. *Id*.

As is required, we recite the evidence in the light most favorable to appellee. The nine-year-old victim testified that her

Uncle Johnny hurt her and her sister. She stated that appellant entered her bedroom late at night without any clothes on and put himself into her. When asked to explain what she meant by that testimony, she stated that "[h]e put his private parts into my private parts." When asked to explain further, she inquired whether she had "to say the words," and after being instructed to do so, she stated, "[h]e put his dick into my pussy." She testified that this happened several times in the summer when she lived with her granny, appellant, and Darrell Pilcher.She also testified that one night she woke up to find appellant with his hands in her panties rubbing up and down; she testified that appellant put his finger inside of her.

Dr. Greg Loyd, a family practioner in Malvern, Arkansas, testified that he conducted a physical examination on the nine-year-old victim in August 1990, the time the information alleged the crime was committed and the time that appellant was living in the same home as the two victims. Dr. Loyd determined that the nine-year-old girl had a perforate hymen which was not intact. Although he could not determine the cause of the three to four millimeter tear in her hymen, he testified that a penis could have caused it.

Darrell Pilcher testified that in 1990 he lived in the same house with appellant, the two victims, and their grandmother. He testified that one night the nine-year-old victim came running to him when he was asleep on the couch and told him appellant had touched her. Pilcher went into her bedroom and found appellant lying in her bed.

The seven-year-old victim testified that when she lived in her granny's house with Uncle Johnny, he hurt her more than once. She explained that "one night he took his pants off and he put some grease on me." She stated that he put the grease on her private between her legs and that he put his private in her private.

■ We have held many times that the uncorroborated testimony of a victim that the defendant committed the rape is sufficient to uphold that defendant's conviction for rape. *See, e.g., Curtis* v. *State*, 301 Ark. 208, 783 S.W.2d 47 (1990). Such a holding is based in part on the fact that determining the credibility of the witnesses is a determination that lies within the province of the jury. *Urquhart* v. *State*, 273 Ark. 486, 621

S.W.2d 218 (1981). It is the jury's decision whether or not to believe the victim and no corroboration is necessary. *Id.*

■ Both victims testified that appellant committed the rapes. The jury judged the credibility of the victims' testimonies and returned a guilty verdict. The evidence is substantial and therefore sufficient to support the verdict.

## MOTION TO SEVER

Appellant alleges the trial court erred in denying his numerous motions, made both prior to trial and during trial, to sever the cases against both victims. Appellant relies on A.R.Cr.P. Rule 22.2(a) and argues he was entitled to a severance as the two cases were joined solely because they were of the same or similar character and were not part of a single scheme or plan. He also relies on A.R.Cr.P. Rule 22.2(b)(ii) and argues he was denied a fair determination of his guilt or innocence of each offense.

■■ Granting or refusing a severance is a matter within the discretion of the trial court. *Fisher* v. *State*, 290 Ark. 490, 720 S.W.2d 900 (1986). We have held that where the facts necessary to prove the offenses would almost all be required in each trial if a severance were granted and the evidence would be used in both trials to prove a plan, scheme, motive or state of mind, there was no abuse of discretion in refusing to sever the cases. *Henry* v. *State*, 278 Ark. 478, 647 S.W.2d 419, *cert. denied*, 464 U.S. 835 (1983). We have also held that evidence of sexual abuse with children other than the victim is admissible to show motive, intent, or plan pursuant to A.R.E. Rule 404(b). *Morgan* v. *State*, 308 Ark. 627, 826 S.W.2d 271 (1992). Thus, as the facts necessary to prove these offenses would be required in both trials and as each of the girls' testimonies would be admissible in the trial of the other's rape to show appellant's intent, motive, or common scheme or plan, the trial court did not abuse its discretion in refusing to sever the two cases.

## MISTRIAL OR CONTINUANCE — YOUNGER VICTIM

With respect to the rape of the seven-year-old victim, appellant argues the trial court erred in denying his motion for mistrial or, in the alternative, motion for continuance based on

the state's failure to comply with discovery. The evidence that appellant alleges was not disclosed to him is a medical examination of the younger victim and a taped interview of her with a social worker. Both the interview and medical examination were conducted in Atlanta, Georgia, in August of 1990, when the younger victim went there to live with her paternal grandmother, Alice Roden.

Appellant asserts that although he made a discovery request of all scientific evidence, he first learned this evidence existed when the seven-year-old victim revealed its existence on cross-examination. When asked if she had ever been examined by a doctor for what she alleged her Uncle Johnny did to her, she responded "[y]es, sir. . . . When I was in Atlanta." At the conclusion of the girl's testimony, appellant moved for a mistrial, severance, and continuance on the basis that the medical evidence could exculpate him. Ms. Roden then testified in an in camera hearing that the seven-year-old girl had been examined by a doctor in Atlanta at the request of a Fulton County, Georgia, social worker because of allegations of sexual abuse against "her younger son." Ms. Roden also testified that the seven-year-old girl had been interviewed on video tape by a social worker in Atlanta and that she thought the taped interview was sent to a social worker in Arkansas.

Appellant argues on appeal that knowledge of the existence of both pieces of evidence, the medical examination and the taped interview, were imputed to the state. Thus, when the state did not supply this evidence to appellant pursuant to his discovery requests, the state did not comply with the requirements of A.R.Cr.P. Rule 17.3(a) to use due diligence and good faith to obtain and supply appellant with this evidence. Therefore, argues appellant, he was entitled to a mistrial, or at the very least a continuance in order to obtain the evidence in question.

A.R.Cr.P. Rule 17.3 states as follows:

> (a)  The prosecuting attorney shall use diligent, good faith efforts to obtain material in the possession of other governmental personnel which would be discoverable if in the possession or control of the prosecuting attorney, upon timely request and designation of material or information by defense counsel.

(b) If the prosecuting attorney's efforts are unsuccessful, the court shall issue suitable subpoenas or orders to cause such material to be made available to defense counsel where the material or other governmental personnel are subject to the jurisdiction of the court.

A review of the transcript reveals that the prosecutor had no knowledge of this evidence prior to the time appellant learned of it. However, appellant relies on *Dumond* v. *State*, 290 Ark. 595, 721 S.W.2d 663 (1986), *Lewis* v. *State*, 286 Ark. 372, 691 S.W.2d 864 (1985), and *Dever* v. *State*, 14 Ark. App. 107, 685 S.W.2d 518 (1985), for the argument that knowledge of this evidence is imputed to the state. The cases relied on by appellant involved evidence known to be directly related to the case being tried and known to exist in the hands of Arkansas state agencies so that the evidence could be obtained by the prosecution. That is not so in the present cases.

The testimony presented at the in camera hearing is not conclusive evidence that either the medical report or the taped interview actually exist, and if so that they are known to exist by any state agency. The testimony is also vague as to whether or not these two pieces of evidence relate to the case against appellant for the rape of the seven-year-old girl. The grandmother's testimony indicates that the medical examination was requested by the Family and Children Services Agency of Fulton County, Georgia, based on allegations of sexual abuse against "her younger son." Nowhere in the transcript can it be confirmed that "her younger son" is the appellant in this case. It is true, however, that on cross-examination, the seven-year-old victim answered affirmatively when asked if she had seen a doctor for what she said her Uncle Johnny did to her. The grandmother's testimony also indicates that the taped interview of the seven-year-old girl could have related to a custody matter. The grandmother testified that she had legal custody of the seven-year-old girl, whose mother had kidnapped her and taken her back to Arkansas. There was no clear statement, by Ms. Roden or otherwise, of what the taped interview concerned.

A mistrial is an extreme and drastic remedy and should be avoided except where fundamental fairness of the trial is at stake; the decision of whether to grant a mistrial is within the

discretion of the trial court and will not be reversed on appeal absent a showing that the discretion was abused. *Snell* v. *State*, 290 Ark. 503, 721 S.W.2d 628 (1986), *cert. denied*, 484 U.S. 872 (1987), *and* 490 U.S. 1075 (1989). Likewise, a continuance is a matter within the discretion of the trial court. *Parker* v. *State*, 292 Ark. 421, 731 S.W.2d 756 (1987). It is appellant's burden to show there was an abuse of discretion in denying the continuance. *Id.* Appellant has failed to meet that burden. Based on the vague and ambiguous evidence presented to it at the in camera hearing, the trial court could have reasonably concluded that the medical examination related to a case occurring outside the jurisdiction of the State of Arkansas against someone other than appellant. Even if there was testimony indicating the medical report related to appellant, there was no testimony indicating the report was in the hands of any Arkansas state agency or was otherwise subject to the jurisdiction of the court as required by A.R.Cr.P. Rule 17.3(b). The trial court could also have reasonably concluded that the taped interview related to a custody matter. Furthermore, if indeed the taped interview related to this case and was in the hands of an Arkansas social worker, it would not be admissible in court. *See Kester* v. *State*, 303 Ark. 303, 797 S.W.2d 704 (1990); *Cogburn* v. *State*, 292 Ark. 564, 732 S.W.2d 807 (1987). Accordingly, we cannot say the trial court abused its discretion in denying appellant's motions for mistrial or continuance.

## CONTINUANCE — OLDER VICTIM

During a pre-trial evidentiary hearing, the following facts were revealed. On July 23, 1991, approximately one week before appellant's case was first set for trial, appellant learned that the nine-year-old victim had accused an adult male other than appellant of raping her. Appellant's information was that the accusation was made in Russellville, Arkansas, but after further investigation discovered the accusation was made in Dardanelle, Arkansas. Appellant contacted the Hot Spring County Sheriff's office which stated it would obtain the records for appellant, but failed to do so.

On August 12, 1991, two days prior to appellant's trial, the trial court granted appellant's request for an order to produce records. The records appellant sought were provided to appellant by the Yell County officials on August 13, 1991.

The Yell County records confirmed that the nine-year-old victim in this case had accused an adult male, other than appellant, of raping her in 1988. The accused denied any sexual abuse of the girl during a polygraph examination. The polygraph examiner determined that the accused's answers to questions regarding sexual abuse of the nine-year-old victim were truthful. The records also indicated that the girl was examined by Dr. Hicks at Children's Hospital. Dr. Hicks' medical report indicated the nine-year-old's hymen was intact, without laceration, cut, or tear.

Appellant moved for a continuance arguing that he needed to procure expert testimony concerning this 1988 medical examination. The trial court granted a continuance and allowed counsel to take Dr. Hicks' deposition, part of which was admitted at trial. Appellant moved for another continuance arguing that because this medical evidence was exculpatory and that the examining physician was not an expert in child sexual abuse, appellant was entitled to a continuance to obtain an expert's opinion of the 1988 examination. The trial court denied this second motion for a continuance.

Appellant's argument is that this 1988 medical examination is exculpatory because it indicates that the nine-year-old victim had previously made the same allegation that she did against appellant in the present case, i.e., "he put his private in my private." However, in the previous case that allegation proved to be false. Appellant claims the prosecution committed a discovery violation by failing to disclose this exculpatory information until two days before trial.

The state defends its conduct by claiming that appellant had an available expert to question about the 1988 examination. This so-called expert is Dr. Greg Loyd, the physician who examined the nine-year-old victim in August 1990, and testified at trial. The state is correct in pointing out that appellant stipulated to Dr. Loyd's qualifications as an expert. However, the state ignores the fact that Dr.Loyd was only qualified by the court to testify as an expert in the field of family medicine. Dr. Loyd stated he was a general practioner. At no point in the transcript was it mentioned that Dr. Loyd was an expert in child sexual abuse.

As mentioned, appellant claims the 1988 medical examina-

tion was material to his case because it was excuplatory. An expert is not needed to determine that the 1988 examination is not exculpatory because Dr. Hicks, the physician who performed the 1988 examination, explained his finding of an intact hymen and stated that penetration of a child's vagina by a digit or an adult penis might not cause vaginal tearing. Thus, this 1988 medical examination does not necessarily exculpate appellant.

It is appellant's burden to show that there has been an abuse of discretion in denying the continuance. *Cotton* v. *State*, 265 Ark. 375, 578 S.W.2d 235 (1979). Appellant was granted one continuance to obtain Dr. Hick's testimony. Based on that testimony, the trial court could have concluded the 1988 medical examination was not exculpatory and therefore not relevant and not material to appellant's case. There is no error in the denial of a motion for continuance to obtain evidence that is not material and not relevant. *Worley* v. *State*, 259 Ark. 433, 533 S.W.2d 502 (1976).

## IMPEACHMENT OF OLDER VICTIM

Appellant attempted to recall the nine-year-old victim to the stand as his first witness, but the trial court would not allow this. Appellant then proffered Defendant's Exhibit #3, which is a transcript of a Dardanelle Police Officer's interview of the nine-year-old victim concerning the 1988 allegation of rape by a man other than appellant. He argued that the purpose of calling her to the stand would be to establish that she had made prior allegations of sexual abuse which were not supported by medical evidence and to attack her credibility by showing she made prior statements inconsistent with the medical testimony which was already admitted in the case. On appeal, appellant claims the trial court erred in not allowing him to attack the credibility of the nine-year-old girl and thereby violated his right to confront witnesses.

We cannot say the trial court erred in denying appellant's request to recall the nine-year-old victim. First, as she had already taken the stand as a witness for the state, appellant had ample opportunity to confront her. She testified after Dr. Hicks' deposition and the admission of his 1988 medical report. Second, the proffer appellant made was nothing more than the transcript of the interview. There was no proffer of the exact alleged

inconsistent statement or statements, nor what was intended to be asked or testified to.

In accordance with Ark. Sup. Ct. R. 11(f), appellant and appellee have abstracted all rulings adverse to appellant. We have reviewed these rulings and determined there was no prejudice to appellant.

Affirmed.

HOLT, C.J., DUDLEY and NEWBERN, JJ., dissent.

JACK HOLT, JR., Chief Justice, dissenting. I would make short shrift of this appeal by reversing and remanding it for retrial. Granted, a defendant is not entitled to a perfect trial, but he is entitled to a fair trial. *See Hoback* v. *State*, 286 Ark. 153, 689 S.W.2d 569 (1985).

Lukach was arraigned and counsel was appointed by the trial court on July 8, 1991, and the cases against him were immediately set for trial on July 31, 1991.

In an effort to fully represent his client, counsel filed appropriate motions for a bill of particulars, discovery, and inspection including, but not limited to, information or material within the prosecutor's knowledge, possession, or control which would tend to negate the guilt of Lukach as to the offense charged. On July 21, 1991, Lukach's counsel learned one of the complainants had accused another man of rape in 1988. Counsel informed the prosecutor of this information who, in turn, referred counsel to the Hot Spring County Sheriff's Office for assistance in gaining information. Counsel met with little success and, as a result, filed a motion with the court to compel discovery about information concerning the prior rape. Two days prior to the trial, the court entered its "Order to Produce Records."On the even of trial, the information was furnished to counsel.

A.R.Cr.P. Rule 17.3 states as follows:

> (a) The prosecuting attorney shall use diligent, good faith efforts to obtain material in the possession of other governmental personnel which would be discoverable if in the possession or control of the prosecuting attorney, upon timely request and designation of material or information by defense counsel.

(b)    If the prosecuting attorney's efforts are unsuccessful, the court shall issue suitable subpoenas or orders to cause such material to be made available to defense counsel where the material or other governmental personnel are subject to the jurisdiction of the court.

It is obvious to me that the prosecuting attorney violated Rule 17.3 to the extent that it was necessary for the trial court to issue its order to compel on the eve of trial.

The purpose of this rule and discovery is to provide a procedure whereby defense counsel can obtain sufficient information in order to properly investigate and prepare for trial and, in particular, to provide effective assistance and representation to his client at the trial itself. Whether or not there was a formal showing by Lukach of specific prejudice by the State's failure to comply is of no moment. The ultimate question is, did counsel receive the requested information in sufficient time to effectively investigate and properly prepare for trial? The simple answer is "no" and, for this reason, prejudice is apparent. Eighty percent of a trial is preparation and the other twenty is presentation.

The State's indifference and lack of good faith in furnishing information to counsel, and the trial court's failure to grant sufficient continuances to permit counsel to properly prepare his case, after receiving all information requested in his motion for discovery and to compel, has denied the defendant a fair trial.

I respectfully dissent.

DUDLEY and NEWBERN, JJ., join in the dissent.